In re George Edward **MARX,**
Jr., Debtor.

**Bankruptcy No. 2–81–00174.**

United States Bankruptcy Court,
S. D. Ohio, E. D.

June 2, 1981.

H. Grant Stephenson, Columbus, Ohio, for The Huntington Nat. Bank.

Robert H. Farber, Jr., Columbus, Ohio, for debtor.

Frank Pees, Trustee, Worthington, Ohio.

## ORDER ON MOTION FOR RECONSIDERATION

R. J. SIDMAN, Bankruptcy Judge.

The Huntington National Bank ("Huntington") has requested that this Court reconsider its Order Confirming Chapter 13 Plan issued on March 2, 1981, in order to include a provision for the payment of interest at the contract rate on the allowed secured claim of Huntington being paid through the plan. The debtor has proposed and has had confirmed a 100% plan. The debtor proposes to pay his first and second mortgage payments, on a current basis, directly to the mortgage holders. However, pursuant to the provisions of § 1322(b)(5) of the Bankruptcy Code, the debtor proposes to pay arrearages owing to the mortgage holders through the Chapter 13 plan in order to cure the pre-petition default. Huntington is the holder of a second mortgage on the debtor's residential real estate, and at the time of the filing of the petition in this case the debtor was in default four (4) payments of $166.71 each. on his second mortgage, or a total of $666.84. Huntington asserts that interest on this amount should continue to accrue at the contract rate of 16.94% until paid on the basis that the property subject to the mortgage is worth well in excess of the combined first and second mortgage amounts and that the

provisions of § 506(b) of the Bankruptcy Code mandate the provision of contract rate interest.

The application of § 506(a) of the Bankruptcy Code to the Huntington claim in this case results in Huntington having an "allowed secured claim" in the amount of $666.84. The value of the real estate in this case exceeds the sum of the mortgage balances of both the first and second mortgages, and thus the application and meaning of § 506(b) of the Bankruptcy Code, as it affects this Chapter 13 case, is at the core of the dispute before the Court.

The payment of the arrearage owed to Huntington is authorized under the provisions of § 1322(b)(5) of the Bankruptcy Code:

"[the plan may]

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ..." 11 U.S.C. § 1322(b)(5).

The choice of a debtor to treat pre-petition defaults under this provision of the Bankruptcy Code is not conditioned upon any factors other than those mentioned in the above-quoted statute. The debtor in this case has chosen to maintain the current second mortgage payments of $166.71, due every month during the course of this Chapter 13 plan, by making such payments directly to Huntington. He has further chosen to deal with the pre-petition default of $666.84 by curing such default under the provisions of § 1322(b)(5) of the Bankruptcy Code. There has been no allegation raised that the default will not be cured within a "reasonable time" as provided for by the statute. Apparently the only question is whether or not the pre-petition default should be subject to payment of the interest rate provided for in the contract, interest at a rate otherwise set by the Court, or interest at all.

Section 506(b) of the Bankruptcy Code provides:

"(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose." 11 U.S.C. § 506(b).

This statutory language is curiously and significantly, it seems, punctuated. The phrase "interest on such claim" is set off by commas, and grammatically such separation leads to the conclusion that the following phrase—"reasonable fees, costs, or charges *provided under the agreement* under which such claim arose"—is meant to be separately considered. Thus, while "interest on such claim" is to be allowed in the situation where the property securing the claim is of greater value than the amount of the claim, it does not follow that such interest is to be that provided under the agreement. In other words, the modifier "provided under the agreement" refers only to fees, costs, or charges, and not to interest.

That construction would appear to be somewhat strained and technical were it not for another provision contained in the Bankruptcy Code which speaks to a similar situation involving post-petition interest. Section 726(a)(5) of the Bankruptcy Code, in setting forth the rules pertaining to the distribution of the property of the estate in a Chapter 7 setting, states that, after payment of administrative and priority claims, all unsecured claims both timely and tardily filed, and payment of certain claims for fines, penalties and forfeitures, each of the foregoing types of claims are to be paid interest *at the legal rate* before, finally, a refund to a debtor is permitted. 11 U.S.C. § 726(a)(5). In the rare case of a solvent estate, the statute limits the payment of interest on claims to the legal rate of interest, and not the rate that may have been otherwise provided for in the contract between the claimant and the debtor. It is interesting to note that at least one respect-

ed treatise appears ambivalent about whether this interest rate substitution— from contract rate to legal rate—represents a codification of existing case law decided under the Bankruptcy Act of 1898, or whether it is in fact a new provision. Compare 4 *Collier on Bankruptcy* (15th ed.) ¶ 726.02[5] p. 726–9—"Thus, section 726(a)(5) of the Code does not change prior law" with 3A *Collier on Bankruptcy* (14th ed.) ¶ 63.16[1] p. 1860–1—"Of broadest application, because affecting all creditors alike, is the case of sufficiency of assets. Interest is then payable *at the rate contracted for* up to the date of payment".

Whether pre-Code law was in fact changed or not, it is clear that the present statute [§ 726(a)(5)] unequivocally opts for the computation of interest on claims in a solvent estate *at the legal rate*. This rule would apply even if it meant that a refund to a debtor would be made in a solvent estate, the debtor not having paid claims in full as calculated under the pre-petition contract to date of payment. Given this clear intention, it is not difficult to conclude that, applying a consistent and parallel construction to § 506(b) of the Bankruptcy Code, the intent of the legislature was, at the very least, not to mandate interest at the contract rate in the § 506(b) setting, but rather to limit interest on over-secured allowed secured claims to a legal rate.

■ The subject of the allowance of post-petition interest is, in the final analysis, however, governed by the equitable principles of bankruptcy administration rather than the validity of such an interest claim under state law. The necessary and inherent power of a bankruptcy court to determine how a debtor's assets shall be distributed is paramount on the subject of the allowance of post-petition interest. See, *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946) and *In re Inland Gas Corp.*, 241 F.2d 374 (6th Cir. 1957).

"It is manifest that the touchstone of each decision on the allowance of interest in bankruptcy, receivership, and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." *Vanston*, supra, 329 U.S. at 165, 67 S.Ct. at 241.

This Court recognizes that the "equities" in any particular case are greatly influenced by the perception of the fact-finder as to the relative "worthiness" of the competing interests. See, *In re Inland Gas Corp.*, supra, 241 F.2d at 380 (comments regarding the "highly inequitable conduct" of a party to that litigation) and *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2nd Cir. 1959). The presence of an ever-variable contract rate would cause a great administrative burden in the calculation of an accurate allowed secured claim in the many cases (especially involving Chapter 13 debtors) where the provisions of § 506(b) come into play. The denial of contract rate interest on secured claims in the Chapter 13 setting, and the provision of some other rate of interest comporting, in the Court's view, to "present value" as defined in § 1325(a)(5) of the Bankruptcy Code, has occurred in numerous reported cases. See, *GMAC v. Hyden (In re Hyden)*, 10 B.R. 21, 6 BCD 1392 (Bkrtcy.S.D.Ohio 1980); *GMAC v. Anderson (In re Anderson)*, 6 B.R. 601, 6 BCD 1155 (Bkrtcy.S.D.Ohio 1980); *In re Ziegler*, 6 B.R. 3, 6 BCD 194 (Bkrtcy.S.D.Ohio 1980); and *In the Matter of Crockett*, 3 B.R. 365, 6 BCD 226 (Bkrtcy.N.D.Ill.1980).

The pre-petition default is to be cured in full in this case. At the conclusion of this Chapter 13 plan, assuming the terms of the plan are fulfilled by the debtor, the Huntington obligation is proposed to be fully current. The statute requires no more from the debtor. At least one bankruptcy court has apparently assumed that interest is not payable at all on pre-petition arrearage. See, *In re King*, 7 B.R. 110, 3 C.B.C.2d 109 (Bkrtcy.S.D.Cal.1980). Other bankruptcy court cases, while discussing the ability to cure default under the provisions of § 1322(b)(5), have not addressed the interest factor question. See, *In re Beckman*, 9 B.R. 193, 3 Bankr.L.Rep. (CCH) ¶ 67, 891 (Bkrtcy.N.D.Iowa 1981). At least one bankruptcy court has apparently reached the conclusion that contract rate interest is

mandated. *In re Gregory*, 8 B.R. 256, 7 BCD 230 (Bkrtcy.S.D.N.Y.1981).

 The Court hereby finds that, in order for the debtor to accomplish his goal of becoming fully current on long-term obligations by the conclusion of the Chapter 13 plan, he must pay the full amount of pre-petition default (including interest, late charges, and other contractually permissible fees) due at the time of the filing of the petition. And to the extent that such an amount may take a period of time to pay, the "equities" demand that the debtor pay interest at *the legal rate*. This affords the debtor the full benefit of the use of § 1322(b)(5), without the burden of a continuing interest rate calculation which can only further impair his pay-back ability, while at the same time adequately compensating the creditor, on a fair and equitable basis, for the delay in the curing of the default. This result promotes debtor rehabilitation while also protecting creditor rights. It is also a result which comports with the statutory mandate of § 1325(a)(5)(B)(ii) of the Bankruptcy Code which deals with the treatment of allowed secured claims in a Chapter 13 case. Huntington is being treated consistently with all other allowed secured claims in this case and this Court finds that nothing in the Bankruptcy Code requires more. In effect, what the debtor has chosen to do by this Chapter 13 filing is to "confess judgment" on pre-petition obligations and then propose a plan for the payment of those obligations. Thus, to the extent that creditors have been acknowledged to possess claims secured in the debtor's property, or to the extent the debtor may be solvent [see, *In re Williams*, 3 B.R. 728, 6 BCD 237 (Bkrtcy.N.D.Ill. 1980)], creditors are entitled to interest at the legal rate (or, put otherwise, to a discount factor) for the delay in receiving payment on such claims and in lieu of liquidating that property. In this Court's view, such an approach has the merit of a consistent treatment of all allowed secured claims (or all allowed claims in a solvent estate) regardless of widely varying pre-petition contract rates, the merit of an administratively-convenient disbursement of Chapter 13 dividends on such claims, and the merit of a result clearly consistent with creditor expectations on the collection of a state court judgment (other than in the mortgage foreclosure area) rendered on the date of the filing of the petition. See, § 1343.03, Ohio Revised Code. Chapter 13 is a debtor rehabilitation remedy, and the debtor's property is not being sold or foreclosed. This debtor's plan to pay his creditors in full, with legal rate interest on certain allowed claims, is eminently fair and appropriate and lawful.

Based upon the foregoing, the Court hereby determines that the motion of The Huntington National Bank is without merit and it is hereby overruled. Simple interest, however, calculated at the legal rate of 8% per annum (see 28 U.S.C. § 1961 and § 1343.03, Ohio Revised Code), will be allowed on the unpaid pre-petition arrearage owed to The Huntington National Bank until paid.

IT IS SO ORDERED.