**In re Ernest Wilson PAIGE, Pathenia Paige, Debtors.**

**Bankruptcy No. 2–81–01371.**

United States Bankruptcy Court, S. D. Ohio, E. D.

Aug. 18, 1981.

Robert L. Cohodes, Columbus, Ohio, for UniMortgage of Ohio.

Samuel L. Calig, Columbus, Ohio, for debtors.

Frank Pees, Worthington, Ohio, Trustee.

### ORDER ON OBJECTION TO CONFIRMATION

R. J. SIDMAN, Bankruptcy Judge.

UniMortgage of Ohio ("UniMortgage") has filed an objection to confirmation of the Chapter 13 plan jointly proposed by Ernest and Pathenia Paige. The objection is premised on the provisions of § 1322(b)(2) of the Bankruptcy Code which state:

"(b) Subject to subsections (a) and (c) of this section, the (Chapter 13) plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims . . . ." 11 U.S.C. § 1322(b)(2).

UniMortgage is a creditor whose only security interest is a second mortgage on the debtors' principal residence, and it thus asserts that its rights cannot be modified by the debtors' Chapter 13 plan. The debtors' plan calls for payments of $250.00 bi-weekly to the Chapter 13 trustee for a period of forty (40) months, payment of the first mortgage obligation on the debtors' principal residence to be made directly by the debtors outside the plan, payment of all allowed secured claims in full, and payment of a 70% dividend on all allowed unsecured claims. The debtors propose to pay in full the allowed amount of the secured claim of UniMortgage, as it existed on the date of the filing of their petition, with an appropriate discount factor included for the deferred payment schedule on that claim. See 11 U.S.C. § 1325(a)(5)(B)(ii).

UniMortgage filed its claim in this case in the amount of $13,251.36. Its assertion of a second mortgage position on the debtors' residential real estate has not been disput-

ed. The value of the debtors' residential real estate, however, has been the subject of some dispute. The Court hereby finds, based upon the record before it, and pursuant to the provisions of § 506(a) of the Bankruptcy Code, that the value of the debtors' residential real estate is $27,500.00. The principal balance owed to the first mortgage holder on this real estate is $11,000.00, and thus the value of the property against which UniMortgage's second mortgage can be asserted is $16,500.00. The UniMortgage obligation, originally incurred in 1980, was originally a ten (10) year obligation. The debtors seek to compress this 10-year obligation into a 40-month period by payments through the Chapter 13 trustee and by alteration of the contract rate of interest of 18% to the discount rate of 8%.

The objection to the confirmation of the Paige Chapter 13 plan raises issues similar to those recently decided by the Court in *In re Neal*, 10 B.R. 535, 7 B.C.D. 752 (Bkrtcy., S.D.Ohio 1981), and *In re Marx*, 11 B.R. 819, 7 B.C.D. 1066 (Bkrtcy., S.D.Ohio 1981). The Court must examine those decisions in light of the present facts to determine whether or not the objection is meritorious.

 UniMortgage finds itself in a position similar to the creditor in *In re Neal*, supra. In evaluating UniMortgage's secured status in this case the Court must consider the mandate of § 506(a) of the Bankruptcy Code:

"(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). (emphasis added).

The underscored language highlights the conceptual approach that must be used in the determination of the secured status of a creditor in a bankruptcy proceeding. It is not the value of the property, *per se*, which is to be used in the determination of secured status, but rather it is the value of the creditor's interest in that property. While it may be conceded that the valuation standard in the Chapter 13 setting is not a forced sale or liquidation standard [see *In re Damron*, 8 B.R. 323 (Bkrtcy., S.D.Ohio 1980)], the Court must determine what a creditor would receive from the collateral upon its customary and commercially reasonable means of disposition. *In re Klein*, 10 B.R. 657, 7 B.C.D. 668 (Bkrtcy., E.D.N.Y. 1981). It is not, therefore, appropriate to merely take the fair value of property and assume that a creditor would receive that full amount upon disposition. For example, cases have recognized that, because costs of sale and overhead are legitimate deductions before net proceeds could be distributed to a creditor holding a lien on a motor vehicle, wholesale or replacement (and *not* retail or forced sale) value is the proper measure of the value of *the creditor's interest* in the property. *Matter of Van Nort*, 9 B.R. 218 (Bkrtcy., E.D.Mich.1981); *Virginia National Bank v. Jones (In re Jones)*, 5 B.R. 736, 6 B.C.D. 965 (Bkrtcy., E.D.Va.1980); and *In re Savloff*, 4 B.R. 285, 6 B.C.D. 349 (E.D. Pa.1980). Again, the distinction to be drawn is between the value of the property itself, and the value of the creditor's interest in the property. While the former value may be subject to widely divergent opinions (an owner of such property, by virtue of some sentimental attachment, may be inclined to assign an inflated worth to such property), the latter value, since it is tested by what an actual willing buyer would pay for the property, and is further tested by the recognition that there will be costs of sale if the creditor is to realize cash for its interest in the property, more closely defines the actual and fair secured status of a lien creditor in a bankruptcy proceeding.

So it is in the present case. Using the *Neal* rationale, UniMortgage's allowed secured claim in this case is to be calculated by taking the fair value of the property ($27,500.00), deducting the costs of sale calculated at 10% (this is at best an approximation, albeit a fair one in light of the customary 7% real estate broker fee in this geographic locale, and the addition of the costs of a title insurance policy or abstract, possible points to be paid by the seller for non-conventional financing and other costs), and further deducting the amount of first mortgage of $11,000.00. This calculation reveals that the value against which UniMortgage's interest can operate is $13,-750.00, and since the claim of UniMortgage is $13,251.36, it will be an allowed secured claim in that full amount. It should be observed that UniMortgage's own agents testified that a 15% margin is the usual factor used for costs of sale, thus if that figure proved to be accurate, UniMortgage would not receive the full amount of its claim upon sale (especially in a foreclosure setting) of the debtors' real estate.

As set forth above, the debtors propose to pay in full the allowed secured claim of UniMortgage. The debtors seek, however, similar to the *Neal* case, to compress the pay-back period on the mortgage to 40 months (from the original 120 months) with an appropriate discount (calculated at 8% per annum—*In re Marx*, supra) for a deferred payment schedule. UniMortgage will receive the full benefit of its bargain as it existed on the date of filing. In fact, it could be fairly asserted that because UniMortgage is receiving its money on a substantially faster pay back schedule than called for in the original contract, that it is receiving more than the benefit of its bargain, at least in terms of recovery of the principal amount of the loan. While UniMortgage's agent was unwilling to speculate on the matter, it seems clear that this would allow earlier reinvestment of those funds in another loan transaction on which UniMortgage could charge the interest rate allowed by state law and that the market place would support. The loss to UniMortgage is certainly less than claimed

and is minimal in this case. Section 1325(a)(5)(B)(ii) permits such treatment and, as this Court found in *In re Neal*, the provisions of § 1322(b)(2) do not augment the mortgage holder's rights. The Court finds that were the debtors to presently liquidate their real estate by sale (either voluntary, through foreclosure, or through a Chapter 7 proceeding), UniMortgage would be entitled to $13,251.36. Instead, the debtors propose to pay that amount in a Chapter 13 case and avoid such liquidation. The proposal to pay UniMortgage made by the debtors in this case is consistent with law and furthers the objectives of Chapter 13—the orderly payment of creditors without liquidation. UniMortgage's objection to confirmation is hereby overruled, and an Order Confirming Plan will issue forthwith.

IT IS SO ORDERED.