### In re Carlton OWENS and Pamela Owens, Debtors.

### Bankruptcy No. 383–00571.

United States Bankruptcy Court, M.D. Tennessee.

Jan. 17, 1984.

Roy N. Wilson, Brown & Wilson, Dickson, Tenn., for debtors.

Charles H. Beaty, Gallatin, Tenn., for Springfield Production Credit Ass'n.

Henry E. Hildebrand, III, Nashville, Tenn., Chapter 13 trustee.

### MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the objection of Springfield Production Credit Association (hereinafter "PCA") to the proposed rate of interest to be paid on its claim under the debtors Carlton and Pamela J. Owens' Chapter 13 plan.[1] Upon considera-

1.  Because the plan was confirmed on May 3,  1983, and this objection was not filed with the

tion of the evidence presented at the hearing, stipulations, exhibits, briefs of the parties and the entire record, this court concludes that PCA's objection should be sustained.

The following shall represent findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

The debtors filed a joint Chapter 13 wage earner petition in this court on February 28, 1983. The debtors' statement of schedules and affairs listed PCA as a secured creditor with a claim of $11,354.79. The collateral for PCA's claim was the debtors' mobile home and lot located in Dickson County, Tennessee. Although the debtors' schedules stated the value of this collateral to be "$1,900.00," the debtors subsequently amended their schedules to indicate that the "appraised value of said realty" is $19,-000. PCA filed a proof of claim in the debtors' bankruptcy case listing their debt as $12,876.90 and the fair market value of the collateral securing the debt as $19,310.

The debtors' proposed Chapter 13 plan was confirmed on May 3, 1983. The plan specifically stated that PCA's claim was fully secured and provided for full payment of this claim together with 13% interest in deferred cash payments of $309.50 per month. The record does not reveal whether PCA's claim was established as $11,354.79, the amount stated in the debtors' schedules, or $12,876.90, the amount set forth in PCA's proof of claim. Since no objection was filed to PCA's proof of claim, the court must assume that the claim was deemed allowed at $12,876.90. See 11 U.S.C.A. § 502(a) (West 1979); 11 U.S.C.A. § 1305(b) (West 1979). The debtors' plan was to continue for 36 months.

Within ten days of confirmation, PCA filed this objection to the debtors' plan. PCA essentially contends that to be confirmed the plan must maintain the contract rate of interest, which is determined from time to time based upon the rate charged on other notes of the same type made by PCA, rather than the 13% annual rate of interest which is provided for by the plan. In support of its position, PCA cites 11 U.S.C.A. § 1322(b)(2) (West 1979), which provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims . . .

PCA asserts that its claim is secured only by a security interest in real property that is the debtors' principal residence and therefore the debtors' plan cannot modify the contract rate of interest.

The court must agree with PCA's assessment that § 1322(b)(2) does not allow any modification of the contract terms, including the set rate of interest, when the creditor's claim is fully secured only by a security interest in real property that is the debtors' principal residence. *See, e.g., In the Matter of Stratton,* 30 B.R. 44, 45–46 (Bkrtcy.W.D.Mich.1983); *In re Simpkins,* 16 B.R. 956, 964–965 (Bkrtcy.E.D.Tenn.1982); *In re Neal,* 10 B.R. 535, 538 (Bkrtcy.S.D. Ohio 1981).

Nonetheless, the question which has not been addressed by either party and which is of critical importance in this case is whether PCA's claim is secured *only* by a security interest in *real property* that is the debtors' principal residence. PCA has a security interest in both the debtors' land located in Dickson County and their mobile home located on that land. The parties do not dispute that the land and mobile home are the debtors' principal residence. Yet, in order to preserve the sanctity of the security agreement under § 1322(b)(2), the mo-

court until May 12, 1983, the court will consider PCA's objection as either a motion for a new trial or a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59, made applicable in this bankruptcy case pursuant to Federal Rule of Bankruptcy Procedure 9023.

bile home must be real property. Otherwise, the secured claim can be modified by the Chapter 13 plan.

Under the law of Tennessee, whether a mobile home is considered a motor vehicle and therefore personal property or a fixture attached to real property depends upon how the mobile home is actually used. *See Associates Capital Corp. v. Cookeville Production Credit Association,* 569 S.W.2d 474, 479 (Tenn.App.1978). Upon review of the record in this case, the court is pursuaded that the mobile home in question has become affixed to the debtors' real property. The certificate of title on this mobile home, which was issued on December 6, 1978, lists the debtors' address as Route 2 in Dickson, the same address listed as their residence in their Chapter 13 petition filed on February 28, 1983. The court must therefore assume that the mobile home has been located on the debtors' realty for a little more than five years and, therefore, has become affixed to the realty. This conclusion is buttressed by the debtors' referral to the mobile home and lot as "realty" in their motion to amend their schedule of debts.

Having determined that PCA's security interest is fully secured only by real property that is used by the debtors as a residence, the court finds that § 1322(b)(2) precludes the debtors from modifying the contract rate of interest set forth in their original agreement with PCA. The court will accordingly enter an order sustaining PCA's objection to the debtors' plan. The plan will be modified to reflect that the interest rate to be paid PCA will be determined in accordance with the original contract between the parties.

IT IS, THEREFORE, SO ORDERED.