**In re Richard L. RORIE, Bernice Rorie, Debtor(s).**

**Bankruptcy No. 2–84–03415.**

United States Bankruptcy Court, S.D. Ohio, E.D.

March 11, 1985.

David C. Lasky, Lasky & Semons, Columbus, Ohio, for debtors.

Robert J. Morje, Columbus, Ohio, for creditor.

Frank M. Pees, Worthington, Ohio, Trustee.

G.L. PETTIGREW, Bankruptcy Judge.

## ORDER DENYING CONFIRMATION

The matter before the Court is the objection of General Credit Co. of Ohio, Inc. (General) to the confirmation of the debtors' proposed Chapter 13 Plan. For the reasons set out below, the Court finds that said objection is well taken and, therefore, orders that confirmation of the debtors' Plan be denied.

### Findings of Fact

This case is the third in a series of bankruptcies filed by debtors over the past decade. The first, a Chapter 7 styled *In re Rorie,* No. B2–76–2444, was filed on November 17, 1976 and resulted in discharge on March 2, 1977. The second case was filed under Chapter 13 of the present Bankruptcy Code in 1980 and resulted in the debtors' discharge on February 16, 1984. This case was commenced on November 9, 1984.

Near the end of the second bankruptcy case, the debtors sought a loan from General and offered their otherwise unencumbered home as collateral. General, which specializes in loans to persons such as the debtors, who have poor credit histories, agreed to make the loan, but wanted to wait until the previous Chapter 13 had run its course. On February 17, 1984, the day after the termination of the prior Chapter 13, General loaned the debtors $8,654.10 with a simple interest rate of 23%. As anticipated, the loan was secured exclusively by a first mortgage on the real estate which is the debtors' principal place of residence.

On November 9, 1984, the debtors proposed a Chapter 13 Plan which would, among other things, pay the debt owed General through the Plan, with a discount factor of 14%.

General filed an objection to this Plan on January 25, 1985 and a hearing was held on the matter on February 12, 1985.

General contends that the proposed reduction of the interest charged on its fully secured claim impermissibly modifies its rights in violation of § 1322(b)(2) of the Bankruptcy Code. 11 U.S.C. § 1322(b)(2). That statute provides that:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) *modify* the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ... (Emphasis added.)

Consequently, the Court must determine whether the alteration of the contract rate of interest due to a fully secured creditor is a modification as contended by General.

This case is essentially one of first impression in this District.[1] However, the Court is not without guidance. Bankruptcy Courts in other districts have confronted

---

**1.** This Court is aware of the cases of *In re Neal,* 10 B.R. 535 (Bky.S.D.Ohio 1981); *In re Marx,* 11 B.R. 819 (Bky.S.D.Ohio 1981); and *In re Paige,* 13 B.R. 713 (Bky.S.D.Ohio 1981). However, none of these cases squarely addressed the issue at hand. In *Neal,* the court essentially held that § 1322(b)(2) did not apply because the mortgagee was undersecured. *In re Marx* only concerned the interest rate on the pre-petition arrearages due on the mortgage, as the debtors proposed to maintain the current, *unaltered* payments "outside the Plan." Finally, *Paige* primarily concerned the methodology of measuring the extent of the mortgagee's allowed secured claim per 11 U.S.C. § 506(a) and allowed an alteration of the interest due the fully secured creditor without any real discussion. Compare *Paige, supra* at 715 with *Neal, supra* at 537, 538.

the issue and have held that such a change in interest rates is indeed a modification within the meaning of § 1322(b)(2). *In re Owens,* 36 B.R. 661 (Bky.M.D.Tenn.1984); *Matter of Stratton,* 30 B.R. 44 (Bky.W.D. Mich.1983). Furthermore, this Court, as have others, has considered the general parameters of the term "modify", albeit in a different context.

In the case of *In re Gwinn,* 34 B.R. 936, 944 (Bky.S.D.Ohio 1983), this Court stated that the term modify, as used in § 1322(b)(2) means "... to make basic or important changes ..." or to "... change in kind, degree, or amount." The Fifth Circuit Court of Appeals, in the case of *Grubbs v. Houston First American Savings Association,* (In re Grubbs) 730 F.2d 236, 244 (5th Cir.1984 *en banc*) stated that "... The 'modification' power ... included authorization to *change the size* and timing *of installment payments as well as the alteration or modification of other provisions of the secured creditors contract."* [2] (Emphasis added.) Applying these definitions to the proposed plan, the Court cannot escape the conclusion that the reduction of the interest rate on this fully secured claim is indeed an impermissible modification of General's rights. A reduction by 9% is surely a "basic" and "important" change in the terms of the debt and surely would change the amount due, as those terms were used in *Gwinn.* Furthermore, such a reduction would result in an "alteration ... of ... provisions of the secured creditor's contract", as stated in *Grubbs.* Therefore, this Court is forced to concur with the holdings of *Owens* and *Stratton, supra,* and orders that the debtors' proposed Plan not be confirmed.

IT IS SO ORDERED.

---

**2.** The "modification" power referred to in *Grubbs* is the power granted by § 1322(b)(2) in regard to the rights of creditors whose security is something other than the real estate comprising the debtor's principal place of business.