In re Jimmy BRADSHAW, Jonnie Mae Bradshaw.

No. C–2–82–796.

United States District Court, S.D. Ohio, E.D.

Dec. 13, 1985.

Jack R. Pigman, Christopher D. Trail, Porter, Wright, Morris & Arthur, Columbus, Ohio, for appellant Huntington Bank.

Joseph R. Stewart, Carlile Patchen Murphy & Allison, Columbus, Ohio, for trustee.

Robin S. Stith, Beatty & Stith, Columbus, Ohio, for appellees.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Appellant The Huntington National Bank ("Huntington"), a creditor of the estate of appellees Jimmy and Jonnie Mae Bradshaw, appeals from the "Findings and Order on Objection to Confirmation by Huntington National Bank" issued by the bankruptcy judge in this case on May 27, 1982. For the reasons stated below, the decision of the bankruptcy judge is REVERSED and REMANDED for further proceedings consistent with this opinion.

### I.

On November 24, 1978, appellees Jimmy and Jonnie Mae Bradshaw executed a promissory note to Huntington. The loan evidenced by the promissory note was to be repaid in ninety-six (96) monthly installments and carried a fourteen (14) percent interest rate. The only security given by appellees for the loan was a second mortgage on the appellees' principal residence. A first mortgage on the Bradshaw's principal residence is held by Mellon Mortgage, Inc. Both the first and the second mortgages are fully secured by the equity in the appellees' principal residence.

On March 2, 1982, the appellees filed for bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *et seq.* On March 12, 1982, the Bradshaws filed a proposed repayment plan as required by 11 U.S.C. § 1321. The proposed plan provided for full and continuous payment to Mellon Mortgage on the first mortgage by having appellees continue to make the required contractual payments directly to Mellon Mortgage, without having the payments go through the plan or the trustee. Appellees proposed to pay Huntington through the plan. Under the terms of the plan, Huntington was to receive the full value of the second mortgage as it existed when the Chapter 13 petition was filed, however, the plan proposed to discount the rate of interest on the loan from fourteen (14) percent to eight (8) percent.

On April 13, 1982, Huntington filed a proof of claim rejecting the Bradshaws' proposed plan. Subsequently, on April 28, 1982, Huntington filed a written objection to the plan. Huntington opposed the appellees' plan on the ground that it violated 11 U.S.C. § 1322(b)(2) by modifying Huntington's rights on a promissory note which was secured only by a security interest in the debtors' principal residence. Huntington also objected to the plan on the ground that it discriminated between claims within the same class of claims contrary to 11 U.S.C. § 1322(a)(3).

On May 27, 1982, the bankruptcy court issued its "Findings and Order on Objection to Confirmation by Huntington National Bank" in which the court rejected the Huntington's objections and confirmed the Bradshaw's proposed repayment plan. In the May 27, 1982 decision the bankruptcy judge found

> ... that Huntington is solely and fully secured by a second mortgage on real estate of $7,547.56. The debtors' plan proposed to pay that full amount to Huntington at a reduced interest rate of 8%. It is the finding of this Court that Huntington's rights are not being modified by debtors' plan.... Further, it is the conclusion of this Court that no modification of Huntington's rights occurs where it, as a secured creditor, received the full value of its secured claim as it existed at the date the petition was filed.

*In re Jimmy Bradshaw,* Case No. 2–82–00734, slip op. at p. 1 (Bankr.S.D. Ohio May 27, 1982). Huntington appeals the findings and conclusion of the bankruptcy court.

### II.

In the present case, the Bradshaws have invoked the protections of Chapter 13 of

the Bankruptcy Code. The purpose of Chapter 13 is to provide individual wage earners with the power to reorganize their debts so that they might retain their property and simultaneously repay their debts through a court-appointed trustee according to an approved plan. 11 U.S.C. § 1322(a) and § 1306(b). *See Matter of Morrison,* 35 B.R. 996, 1000 (S.D. Ohio 1983). Thus, Chapter 13 is designed to permit rehabilitation and provide relief without requiring a debtor to liquidate his assets. Courts have generally recognized the liberal, rehabilitative intent of Chapter 13 and have liberally construed its provisions, even to the extent of delaying the enforcement of, or permitting the impairment of, secured creditors' claims, including the claims of mortgage holders. *See Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236 (5th Cir.1984); *In re Taddeo,* 685 F.2d 24 (2d Cir.1982); *In re Freed & Co.,* 534 F.2d 1235 (6th Cir.1976).

The debtor has the obligation to file a plan in a Chapter 13 proceeding. 11 U.S.C. § 1321. A plan should provide for full payment, in deferred cash payments, of all claims entitled to priority under 11 U.S.C. § 507, unless the holder of a particular claim agrees to different treatment, 11 U.S.C. § 1322(a)(2), and should provide the same treatment for claims within a particular class, if a plan classifies claims. 11 U.S.C. § 1322(a)(3). A plan may designate a class or classes of unsecured claims, may provide for curing or waiving of any default, or it may modify the rights of holders of certain secured or unsecured claims. 11 U.S.C. § 1322(b). The ability of a debtor to modify the rights of holders of secured claims is limited, however, by section 1322(b)(2), which provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* . . .

(emphasis added). In the present case, the Huntington argues that the clear language of section 1322(b)(2) required the bankruptcy judge to deny confirmation of the Bradshaws' proposed plan, because the language of section 1322(b)(2) prohibits any change in the contractual provisions of a loan secured only by a security interest in the debtor's principal residence.

## III.

The question in this case is whether section 1322(b)(2) prevents modification of any loan secured only by a security interest in the debtor's principal residence, or whether the section 1322(b)(2) exception applies only to first mortgage purchase money security interests. At issue, then, is the proper statutory construction and interpretation of the scope of section 1322(b)(2).

"The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). The plain meaning of the language used by Congress is the primary, and ordinarily the most reliable, source of interpreting the meaning of a statute. *Watt v. Alaska,* 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 1678 n. 9, 68 L.Ed.2d 80 (1981). It is a well recognized canon of statutory construction, however, that a court should look beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute. *Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983). A court must not look merely to a particular clause in which general words are used, but must consider the entire statute and the objects and policy behind its enactment. *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1973).

On its face, the plain language of section 1322(b)(2) clearly prohibits confirmation of the Bradshaws' proposed plan. The statute forbids any modification of the terms of a loan secured only by a security interest in the debtor's principal residence. The term "modify," as used in section 1322(b)(2), means " . . . to make basic or

important changes ..." or to "change in kind, degree, or amount." *In re Rorie*, Case No. 2–84–03415, slip op. at p. 4 (Bankr. S.D. Ohio March 11, 1985); *In re Gwinn*, 34 B.R. 936, 944 (Bankr. S.D. Ohio 1983). In the present case, appellees propose to reduce the interest rate on the loan from the Huntington by six (6) percentage points—from fourteen (14) percent to eight (8) percent. Such a reduction is "basic" and changes the amount due under the terms of the contract. That is, a change in the interest rate is the type of alteration encompassed by the term "modify," as it is used in section 1322(b)(2). Since the Huntington's claim is secured only by the debtors' principal residence, it cannot be modified under the express exception contained in section 1322(b)(2). *In re Wilson*, 58 B.R. 164 (Bankr.S.D. Ohio 1985); *In re Shaver*, 58 B.R. 166 (Bankr. S.D. Ohio 1985); *In re Rorie*, 58 B.R. 162 (Bankr. S.D. Ohio 1985); *In re Owens*, 36 B.R. 661 (Bankr. M.D.Tenn. 1984); *In re Hubbard*, 30 B.R. 39 (Bankr. W.D. Mo. 1983); *Matter of Stratton*, 30 B.R. 44 (Bankr. W.D. Mich.1983).

Although the plain language of the statute seems to prohibit confirmation of the proposed plan, the appellees rely on a line of cases which hold that the proposed modification of Huntington's second mortgage is proper under section 1322(b)(2). *In re Bruce*, 40 B.R. 884 (Bankr. W.D. Va.1984); *In re Morphis*, 30 B.R. 589 (Bankr. N.D. Ala. 1983); *In re Paige*, 13 B.R. 713 (Bankr. S.D. Ohio 1981); *In re Neal*, 10 B.R. 535 (Bankr. S.D. Ohio 1981); *United Cos. Fin. Corp. v. Brantley*, 6 B.R. 178 (Bankr. N.D.Fla.1980). At first glance, several of these cases are factually distinct from the case *sub judice*. In *Bruce*, *Morphis*, and *Neal*, the bankruptcy court allowed modification of a second mortgage secured only by an interest in the debtor's principal residence despite section 1322(b)(2), however, in these cases the second mortgage was undersecured. *Bruce*, 40 B.R. at 886; *Morphis*, 30 B.R. at 594; *Neal*, 10 B.R. at 537. In *Morphis* and *Brantley*, the bankruptcy judge found that

section 1322(b)(2) did not apply because the creditor had taken security other than an interest in the debtor's principal residence to secure the loan: in *Morphis*, the creditor had also taken an interest in a vacant lot, *Morphis*, 30 B.R. at 594, and in *Brantley*, the creditor had been assigned a life insurance policy for the stated purpose of providing additional security. *Brantley*, 6 B.R. at 189.

In *Paige*, it is unclear whether the creditor holding the second mortgage was undersecured or not. The bankruptcy court allowed the claim as secured for its full amount, however, the finding that the creditor was fully secured depended on the percentage used to calculate the costs of sale. *Paige*, 13 B.R. at 715. The *Paige* court confirmed a proposed Chapter 13 plan that compressed the pay-back period on the loan from 120 months to 40 months and discounted the interest rate from a contract rate of 18 percent to the discount rate of 8 percent. Although the bankruptcy judge in *Paige* relied principally on the earlier decision in *Neal*, the court recognized that the undersecured creditor in *Neal* was in a much different position than the fully-secured creditor in *Paige* for the purposes of section 1322(b)(2). The *Paige* court determined that the creditor was receiving the "benefit of its bargain, at least in terms of recovery of the principal amount of the loan." *Paige*, 13 B.R. at 715. Consequently, the bankruptcy judge deduced that the faster repayment of the debt, even though at a lower rate of interest, was to the obvious benefit of the objecting creditor because it "... would allow earlier reinvestment of those funds in another loan transaction." Thus, yet another argument was created to avoid the statutory command of section 1322(b)(2).

■ The underlying rationale of *Paige*, *Neal*, and the other cases cited by the appellees to support confirmation of their proposed plan is that the plain language of the statute, considered in conjunction with the legislative intent and the rehabilitative purposes of Chapter 13, compels the con-

clusion that section 1322(b)(2) does not prohibit modification of a non-purchase money, short-term debt secured only by an interest in the debtor's principal residence. Although the legislative history of section 1322(b)(2) is virtually non-existent, these courts have concluded that the statute was enacted only to protect purchase money first mortgages:

> Although the legislative history is silent, the plain intent of the exception is to provide stability in the residential long-term home financing industry and market. It is to specifically protect institutional lenders engaged only in providing long-term home financing and not lenders primarily engaged in consumer and other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts.

*United Cos. Fin. Corp. v. Brantley*, 6 B.R. at 189. The courts conclude that there is no reason to believe that lenders other than purchase money lenders should benefit from the provisions of section 1322(b)(2):

> No clue is given as to why this added protection was merited by a lender who may have only taken real estate as security, as opposed to a lender who may have required additional security in the form of stock, accounts receivable, motor vehicles, or other personal property.

*In re Neal*, 10 B.R. at 537.

On its face, the statute clearly does not contain any purchase money requirement for a creditor to qualify for the protection given by section 1322(b)(2). As all the courts relied on by appellees recognize, the legislative history is silent on this point. The enactment of section 1322(b)(2) probably had no effect on the residential long-term home financing industry and market, however, section 1322(b)(2) may well have changed the manner in which consumer lending companies do business. Prior to its enactment, companies making loans for consumer goods took security interests in a variety of household goods, as well as a second, third, or fourth mortgage on real estate of the debtor. Apparently in response to section 1322(b)(2), the trend is to take a mortgage only on real property that is the debtor's principal residence so that the loan contracts are not subject to modification in a Chapter 13 case. *See In re Bruce*, 40 B.R. 884; *In re Neal*, 10 B.R. 535. If this is the case, then it is because consumer lenders have simply responded to the change in the law.

It is unclear, too, that the purported "added protection" is entirely one-sided. For example, in the present case the Huntington did not require additional security, in the form of an interest in motor vehicles or other personal property of the debtor, to secure the loan, even though Huntington may have insisted on such security to increase its ability to recover the balance due in the event the debtor defaulted, or if its security interest in the debtor's principal residence became undersecured at some point in the future. In essence, Huntington passed up the opportunity to oversecure itself, and it may be that forebearance, with its obvious beneficial effect on the rehabilitation of the debtor, that is the basis for any "added protection" that the *Neal* court thought section 1322(b)(2) gave to lenders in the position of appellant.

Fundamental to this Court's decision are two facts: first, that the creditor is fully secured by its interest in the debtor's principal residence and so clearly within the plain language of section 1322(b)(2). Second, as a matter of statutory construction, the interpretation of section 1322(b)(2) advocated by appellees and set forth in *Neal* and similar cases renders the exception created by that section virtually devoid of meaning. As the court stated in *Stratton:*

> It is certainly a modification of mortgagee's rights if a debtor can change the length of the obligation, and change the interest rate. Because I believe the Code is not to be interpreted in such a way that a subsection is meaningless, I reject the analysis of the *Neal* court.

*In re Stratton*, 30 B.R. at 46. And, to the extent a lender is fully secured by a second or subsequent mortgage, the *Neal* court agreed with *Stratton:* "To the extent that the creditor holds a secured claim ... it is

entitled (absent its consent otherwise) to have that claim fully paid." *In re Neal,* 10 B.R. at 540.

In the present case, Huntington's second mortgage is fully secured only by an interest in the debtor's principal residence. Section 1322(b)(2) clearly prohibits modification of that claim. The interpretation of section 1322(b)(2) urged by appellees is broad and without support from the statutory language or the legislative history. Furthermore, the interpretation advanced by appellees severely limits the exception created by section 1322(b)(2). Congress is well aware of how to confine the scope of its statutes and the way in which broad or narrow exceptions are created. Section 1322(b)(2) is unambiguous. Accordingly, the appellees' plan cannot be allowed to modify the contract interest rate on the Huntington's claim; as proposed, the plan clearly violates section 1322(b)(2) and cannot be confirmed by the bankruptcy judge. The order of the bankruptcy judge is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion.

IT IS SO ORDERED.