**In re Richard WEBER and Geraldine Weber, Debtors.**

**Bankruptcy No. 2–91–04058.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 7, 1992.

Les Swinford, Jr., Columbus, Ohio, for Avco Financial Services Loan, Inc.

Matthew R. Roth, Reynoldsburg, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio.

## OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is before the Court on the requested confirmation of a Chapter 13 plan proposed by debtors Richard and Geraldine Weber. Avco Financial Services, Inc. ("Avco") filed an objection to confirmation in which it challenges the treatment proposed for its allowed claim.

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334 and the general order of reference previously entered in this district. This is a core proceeding which this bankruptcy judge may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(L).

The debtors' plan, as amended, proposes in part to pay $938 each month to the Chapter 13 trustee for payment in full of allowed secured and priority unsecured claims, and a dividend of 11% to allowed general unsecured claims. Avco holds a note obligation secured by a second mortgage against the debtors' residence. That note calls for payments of $386.61 each month over a term of five years at an annual percentage rate of 20.30%. Under the plan, as proposed, Avco is to retain its lien and be paid its allowed secured claim with a 10% discount factor. Any obligation to Avco in excess of its allowed secured

claim is to be allowed and paid as unsecured at the 11% dividend.

## II. *Issues To Be Determined*

There are three issues to be decided. First, the Court must determine whether the debtors' plan, which proposes to retain the residence, may reduce the value of the collateral securing Avco's claim by hypothetical costs of sale or transfer prior to determining Avco's secured claim. Second, if such deduction is permitted, the Court must decide whether Avco's claim, which is secured only by a mortgage against the debtors' residence, can be bifurcated into allowed secured and unsecured components. Third, if bifurcation is permitted, the Court must determine the appropriateness of the specific treatment proposed for Avco's secured claim under the plan.

## III. *Legal Discussion And Conclusions Of Law*

### A. The Deduction for Costs of Sale or Transfer

■ Sections 1325(a)(5)(B) and 506(a) of Title 11 are the statutory provisions relevant to the process of determining the extent of Avco's claim which is secured. Section 1325(a)(5)(B) mandates certain treatment of an allowed secured claim in a Chapter 13 plan if the holder of that claim has rejected the debtors' plan. In applicable part that statute states:

(a) [T]he court shall confirm a plan if—

. . . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . .

11 U.S.C. § 1325(a)(5)(B) (1992).

The debtors' plan proposes that Avco retain its lien and that its secured claim be paid in full with a discount factor of 10%.

Avco has rejected this plan. Therefore, one focus of the dispute must be whether the amount of the claim proposed to be paid over time with a discount factor is "not less than the allowed amount of such claim."

Avco's total claim is $15,200.46. The fair market value of the real property securing Avco's claim has been appraised at $65,000. Avco does not contest that value. There is a prior first mortgage against the property in an approximate amount of $46,170.00. Therefore, Avco contends that its allowed secured claim is at least as much as its debt of $15,200.46 and it is, therefore, fully secured.

The debtors, however, maintain that Avco's secured claim does not exceed $12,330. That calculation presumes subtraction of 10% from the appraised value of the property for costs of sale or transfer as well as subtraction of the first mortgage debt. The plan does not specifically propose to sell the property. Because the dividend proposed for allowed unsecured claims is 11%, to the extent Avco's claim is not allowed as secured, the debtors propose to pay Avco at that dividend percentage as an allowed unsecured claimant.

Although § 1325(a)(5)(B) mandates certain treatment for an allowed secured claim if the holder of that claim rejects the plan, § 506 of the Bankruptcy Code governs the allowance process for the secured status of a claim in cases filed under any chapter of the Bankruptcy Code.[1] The subsection of § 506 implicated in this matter is (a), which states in applicable part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the *value of such creditor's interest in the estate's interest in such property,* . . . and is an unsecured claim to the extent that the value of *such creditor's interest* . . . is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed*

---

1. *See* 11 U.S.C. 506 (1992).

*disposition or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting *such creditor's interest.*

11 U.S.C. § 506(a) (1992) (Emphases added.)

Case law divergence on this issue is attributable to the resolution chosen by a particular court of a perceived internal inconsistency between the language underlined in sentence 1 of § 506(a) and that underlined in sentence 2 of that section. If the secured claim is viewed as described in the first sentence of § 506(a), as "the creditor's interest in the estate's interest in such property," a deduction for costs of sale or transfer is usually authorized. *See, e.g., In re Claeys,* 81 B.R. 985, 990–992 (Bankr. D.N.D.1987). On the other hand, courts which hold that the debtor's intention to retain the collateral (the "proposed disposition") also causes variance in the extent of the creditor's interest as well as in the value of the collateral, have not authorized subtraction of such costs. *See, e.g., Brown & Co. Securities Corp. v. Balbus (In re Balbus),* 933 F.2d 246 (4th Cir.1991).

■ This Court believes that it is always the value of the creditor's interest in the estate's interest in the property which is the focus for determining the amount of an allowed secured claim pursuant to § 506(a). The issue is not the standard to be used to value the collateral in connection with a Chapter 13 plan. Rather, the extent of the estate's interest in the property is the starting point for determining the extent of the creditor's lien interest which is secured by value in the property against which the lien operates.

The courts generally agree that reduction of collateral value for costs of sale or transfer reflects a creditor's expectation that realization on its security requires associated costs. These costs may arise from repossession and foreclosure or from voluntary sale to a subsequent owner. Only when the creditor is in the business of selling the type of collateral which secures its debt, can a creditor in a consumer case seriously argue that recourse to its collateral to satisfy its debt would result in actual costs of transfer or sale which

would be less than approximately 10% of the collateral's value. That reality has been recognized in this district in consumer cases since 1981. *See In re Neal,* 10 B.R. 535 (Bankr.S.D.Ohio 1981); *In re Paige,* 13 B.R. 713, 715 (Bankr.S.D.Ohio 1981).

■ The language in sentence two of § 506(a) does not change this reality. Although the value of the collateral and, correspondingly, the *amount* of the creditor's allowed secured claim may vary according to the intended use of the property or the purpose for which the valuation is made, the nature or relative extent of the creditor's interest in that property does not change. If a Chapter 13 debtor is retaining property subject to a valid lien, the standard used to value that property will be between liquidation and retail value for personal property and close to fair market value for real property. *See In re Damron,* 8 B.R. 323 (Bankr.S.D.Ohio 1980).

On the other hand, if a debtor enters Chapter 7 with accounts receivable as collateral for a creditor's claim and that secured claim is to be allowed for payment from the estate because the trustee in bankruptcy is to liquidate the accounts, the value of those accounts will vary considerably depending upon whether the trustee intends to sell the business as a whole or separate the accounts and sell them separately at a liquidation sale. If such accounts are to be utilized by a debtor in Chapter 13 in continuation of a business, their value will be higher than in either of the other situations. Likewise, real property to be liquidated quickly by a Chapter 7 trustee will be valued using a lower standard of valuation than would be used if the real property were to be retained by a debtor for sale under future market conditions. Such considerations cause variation in the "such value" in sentence two of § 506(a). In this sense, "such value" as used in sentence two of § 506(a) refers to the value of the property serving as collateral, but not to the extent of the creditor's interest in the property. The creditor's interest referenced in "such creditor's interest" at the end of sentence two, how-

ever, is the same interest intended by identical language in sentence one.

It can be seen, therefore, that the value of the property to which a creditor's lien attaches will vary with the purpose for the valuation or the proposed disposition of the property. However, the extent of the creditor's interest in that property will never exceed the value of the property, under any appropriate standard, minus costs associated with selling or transferring the property and the amount of any senior liens. The equity to value ratios used by lenders recognize this fact. If the debt is not paid according to its terms and the creditor is forced to look to its collateral for satisfaction, there is a slippage between the value of the property, on whatever appropriate market or standard is chosen, and the amount the creditor will receive. It is the amount the creditor should reasonably be expected to realize if forced to look to its collateral that an allowed secured claim represents. That is expressed in sentence one of § 506(a). The changing standard of value recognized by the second sentence of that statute does not alter that result. Further, no legitimate policy would be advanced by permitting a secured creditor to improve its position with regard to realization of its collateral value merely because its debtor has filed a bankruptcy reorganization case.

In conclusion, the fairer result recognizes that a creditor's claim secured by a lien against property in which the estate has an interest must reflect transfer or sale costs which would always occur were the creditor forced to resort to the property for repayment. No argument has been advanced that 10% is an unreasonable estimate of those costs. Consequently, the Court sustains the debtor's proposal to subtract from the appraised value of the collateral prior to determining the amount of Avco's allowed secured claim, not only the amount of any mortgage or other lien prior to Avco's, but also an allowance for estimated transfer or sale costs.

B. Bifurcation of Avco's Claim

The second part of Avco's objection challenges the debtors' use of 11 U.S.C. § 506(a) to bifurcate Avco's claim into secured and unsecured components. That challenge relies upon the language of 11 U.S.C. § 1332(b)(2).

Section 1322(b)(2) states in applicable part:

(b) [T]he plan may—

. . . . .

(2) modify the rights of *holders of secured claims*, other than a *claim secured* only by a security interest in real property that is the debtor's principal residence . . .; (Emphases added).

11 U.S.C. § 1322(b)(2) (1992).

Case law is divided about the effect of § 1322(b)(2) on the bifurcation provisions required by § 506(a). One line of cases holds that § 506(a) and § 1322(b)(2) are inconsistent, the more specific provision of § 1322(b)(2) controls, and bifurcation is not permissible. *E.g., In re Chavez*, 117 B.R. 733 (Bankr.S.D.Fla.1990); *Nobelman v. American Svgs. Bank*, 129 B.R. 98, 101 (N.D.Tex.1991); *In re Catlin*, 81 B.R. 522 (Bankr.D.Minn.1987).

The other line of cases finds no inconsistency in the two provisions because the phrases "holders of secured claims" and "a claim secured only by" are interpreted as referring to a "secured claim" within the meaning ascribed to that status by § 506(a). If § 506(a) has been applied to a creditor's interest in property and that interest in property is found to be less than the creditor's entire claim, only the allowed secured claim or the portion of the total claim represented by available value in the collateral is protected by § 1322(b)(2). Under this line of authority, if the creditor's only security is the debtor's residential real property, the portion of the entire claim which is allowed as secured pursuant to § 506(b) may be treated in the plan as an allowed secured claim. The allowed unsecured claim is subject to modification along with unsecured claims generally. *E.g., In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989), *aff'd*, 123 B.R. 254 (S.D.Ohio 1990); *In re Hart*, 923 F.2d 1410 (10th Cir.1991); *Hougland v. Lomas & Nettleton Co. (In re*

*Hougland)*, 886 F.2d 1182 (9th Cir.1989); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir.1970).

Bifurcation of an undersecured creditor's claim is a basic premise of the Bankruptcy Code. The language of § 1322(b)(2), which prohibits modification of the rights of a holder of a secured claim if the only security for the obligation is the debtor's residence, presupposes allowance of the secured claim pursuant to § 506(a). Had Congress intended to prohibit modification of the rights of holders of *debts* secured either wholly or partially by the debtors' residential real estate, the provision would have been so drafted. That is not the language which appears in the statute. It is the secured claim, not the entire claim, that may not be modified. The Court sees no reason to ascribe a meaning to the terms "secured claim" or "claim secured" as such terms appear in § 1322(b)(2), which departs from the meaning of those terms elsewhere in the Bankruptcy Code. *See Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (dissent generally at 780).

The Court finds that the protection provided by § 1322(b)(2) applies only to the secured claim of a creditor whose sole security is a debtor's residence. The bifurcation process mandated by § 506(a) applies to the creditor's claim and the modification restriction protects only the portion of that entire claim which is allowed as secured. This interpretation best comports with the meaning of both sections and interprets them in a manner which is internally consistent. Accordingly, the debtors' plan may provide for the application of § 506(a) and the resulting bifurcation of Avco's claim.

### C. Treatment of Avco's Secured Claim Under the Plan

█ The debtors' plan permits Avco to retain its lien and proposes to pay Avco's secured claim over a period in excess of 55 months at a discount factor of 10%. Under the contract, however, the obligation to Avco requires monthly payments of $386.61 over a term of 60 months, beginning October 19, 1990, at an annual percentage rate of 20.30%. The debtors argue, in essence, that the treatment proposed meets the confirmation test of § 1325(a)(5)(B) and that no more than that is required. Avco insists, on the other hand, that the protection against modification of its rights given by § 1322(b)(2) prohibits the proposed treatment.

The circumstances presented by this plan are not similar to those which formed the basis for earlier decisions in this district. *See, e.g., Neal*, 10 B.R. at 537–540 and *Paige*, 13 B.R. at 715. In those cases, the proposed treatment of the creditor's secured claim resulted in acceleration of repayment to the creditor. Here, Avco will receive a slower repayment under the plan than it is entitled to receive under its contract and at a discount factor which is significantly lower than the rate of interest under its loan. Such treatment is permissible for allowed secured claims in Chapter 13 generally. However, the benefit and protection conferred upon the holder of an allowed secured claim, the only security for which is the debtors' residence, means that the modification proposed by these debtors is prohibited. This is not a situation where full repayment of the allowed secured claim is accelerated. Clearly, the plan as proposed substantially and negatively modifies the claimant's rights in a manner prohibited by § 1322(b)(2).

### IV. *Conclusion*

Based on the foregoing, Avco's objection to confirmation is sustained in part and overruled in part. The debtors have twenty (20) days from the service of this order to amend their plan consistent with this ruling and to correct other deficiencies, such as the length, which were noted by the Chapter 13 trustee at confirmation. If timely amendments are not filed or other appropriate action is not taken, the Court will dismiss the case.

IT IS SO ORDERED.