**In re Robert E. BORING, Karen E. Boring, Debtors.**

**Bankruptcy No. 2–85–01401.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 27, 1988.

Robert H. Farber, Jr., Columbus, Ohio, for debtors.

F. Richard Heath, Hite & Heath, Utica, Ohio, for Cambridge PCA.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Michelle T. Sutter, Baker & Hostetler, Columbus, Ohio, for Trustee.

**ORDER DENYING MOTION OF CAMBRIDGE PRODUCTION CREDIT ASSOCIATION FOR RELIEF FROM STIPULATION**

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the Motion for Relief from Stipulation ("Motion") filed by Cambridge Production Credit Association. An opposing memorandum was filed by Frank M. Pees, the standing Chapter 13 trustee ("Trustee"). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1), and (2)(A). The following opinion shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. *Findings of Fact*

At the August 21, 1987, hearing the Trustee, Cambridge Production Credit Association and debtors requested, through counsel, that they be allowed to submit this

contested matter for decision on the basis of certain stipulated facts. Upon the filing on August 28, 1987, of a document captioned "Stipulation of Facts," the Court deemed this matter to be fully submitted. The facts stipulated by the Trustee, Cambridge Production Credit Association and debtors are incorporated as factual findings in this matter and are reprinted verbatim below:

1. P.C.A. is the holder of a second mortgage on real property located at 10814 Township Road, 390B Northwest, Thorneville [sic], Ohio. The holder of the first mortgage against such property is Federal Land Bank of Louisville.

2. The schedules filed by debtors, Robert E. Boring and Karen E. Boring ("Debtors") on May 10, 1985, valued the real property at $70,000. P.C.A. filed an objection to this valuation.

3. On June 28, 1985, a meeting of creditors was held pursuant to 11 U.S.C. § 341. At that time, Debtors, P.C.A. and Trustee entered into a signed stipulation whereby all parties agreed that the value of the real property at the time of the filing of the bankruptcy petition was $83,000. At the time of filing of the petition, P.C.A. was owed $35,976.25 in principal.

4. A copy of the stipulation has been attached to this Stipulation of Facts as Exhibit A. P.C.A. and Trustee state that Exhibit A is a true and accurate copy of the stipulation executed by them either individually or through their attorney on June 28, 1985.

5. Debtors' plan was confirmed by order of this court entered November 27, 1985. Under the plan, the allowed secured claim of P.C.A. is to be paid at the rate of 100 cents on the dollar, together with interest thereon at the rate of 11 percent per annum. Any unsecured claim is to be paid at the rate of 25 cents on the dollar.

6. Debtors, P.C.A. and Trustee entered into a further stipulation on June 28, 1985, whereunder the value of the livestock and farm machinery subject to the security interest of P.C.A. was determined to be the sum of Twenty–One Thousand Six Hundred Forty Dollars ($21,640).

7. Based on the above stipulations, Trustee determined that the allowed secured claim of P.C.A. was the amount of $29,492.86. This figure was determined as follows:

$83,000.00 ....value of real property per stipulation.
($8,300.00)....10 percent deduction for cost of sale.
($66,847.14)....secured claim of Federal Land Bank of Louisville, first mortgage holder.
$ 7,852.86 ....equity in real property remaining.

This equity combined with the value of the livestock and farm machinery resulted in an allowed secured claim in the stated amount.

8. Trustee has paid P.C.A. in accordance with these valuations since November, 1985. This motion was filed by P.C.A. on September 29, 1986. Prior to the filing, P.C.A. had accepted and retained the sum of $8,846.37 pursuant to the stipulation and determinations set forth above. During the pendency of this motion, P.C.A. has received an additional $5,480.52 in partial satisfaction of its allowed secured claim.

9. In determining the amount of the claim which would be secured for purposes of distribution under debtors' plan, the Trustee deducted from the stipulated valuation for the real property a figure equivalent to 10% of said valuation. This deduction was made purusant [sic] to the decision in *In re Paige* [13 B.R. 713 (Bankr.S.D.Ohio 1981)].

10. The Trustee further deducted from the stipulated value of the real property all outstanding mortgages with a higher priority than P.C.A.'s.

11. Prior to entering into the Stipulation of June 28, 1985, P.C.A. had no knowledge that the Trustee would reduce the stipulated values by 10%.

12. At the time of entering into this Stipulation, P.C.A. understood that, by virtue of the stipulated amounts, it would be paid in full as a fully secured creditor at the 11% interest rate.

13. The plan proposed by the debtors and confirmed by this Court did not provide for the sale of property for which a stipulation was made.

### III. *Conclusions of Law*

This matter is before the Court in a rather unusual procedural posture. Neither the debtors nor the Trustee has objected to the proof of claim of Cambridge Production Credit Association ("Cambridge PCA"), filed as a secured claim in the amount of $35,976.25 (the "Claim"). The Trustee has, however, distributed monies pursuant to the confirmed plan to Cambridge PCA and other allowed claimants, but has treated Cambridge PCA as the holder of both a secured claim in the amount of $29,492.86 and an unsecured claim totaling $6,483.39. Although Cambridge PCA has never expressly agreed that any portion of its Claim is unsecured, nor has there been any judicial determination to that effect, the Trustee has relied upon a written Stipulation of Value of Secured Collateral ("Stipulation of Value") signed by these parties on June 28, 1985. Pursuant to that stipulation, the parties jointly agreed to the value of certain real and personal property (hereinafter sometimes collectively referred to as the "Collateral") in which Cambridge PCA claims a valid security interest. The collateral consisting of real property has been valued at $83,000. The personal property collateral is valued at $21,640, and consists of livestock ($7,200), and farm machinery and equipment ($14,440). Although the Stipulation of Value established the value of the Collateral in which Cambridge PCA claims an interest, it does not specify the standard of valuation (e.g. retail, wholesale, forced sale, liquidation, etc.), nor does it include any reference to, or make provision for, the specific amounts of Cambridge PCA's allowed secured or unsecured claims.

In calculating the amounts to be distributed to creditors under the plan, the Trustee deducted, as a projected sale cost of the real property subject to the mortgage liens of Cambridge PCA and Federal Land Bank of Louisville ("FLB"), ten percent of the stipulated value of the real property. The deduction of $8,300 as a sale cost leaves FLB, holder of a first mortgage on the real property, with a fully-secured claim in the amount of $66,847.14. The remaining equity in the real property—$7,852.86—serves as partial security for the claim of Cambridge PCA. Thus, the Trustee has assumed that Cambridge PCA's allowed secured claim is $29,492.86, not $35,976.25 as filed, on the basis of the parties' agreement as to the value of the Collateral and a deduction of the projected costs of sale.

The Motion requests two alternative forms of relief. Cambridge PCA requests an order barring the Trustee from applying the ten percent deduction and requiring him to adjust all prior payments accordingly. Alternatively, the movant requests relief from the Stipulation of Value on the ground that it had no knowledge that the Trustee would deduct ten percent from the agreed-upon value of the real property.

As support for its Motion, Cambridge PCA contends that it was unaware at the time it entered into the Stipulation of Value that the Trustee would deduct ten percent as a cost of sale. In agreeing, through negotiations, to the values set forth in the Stipulation of Value, Cambridge PCA believed its Claim was fully secured. It is undisputed that, had the Trustee not deducted $8,300 as a sale cost, there would be $16,152.86, not $7,852.86, in equity left in the real property, more than enough to place Cambridge PCA in a fully secured— in fact, oversecured—position. Thus, the deduction of ten percent results in distributions by the Trustee to Cambridge PCA as if its Claim is secured in the amount of $29,492.86 and unsecured in the amount of $6,483.39. Cambridge PCA objects to such treatment of its Claim by the Trustee on the ground that holders of secured claims will be paid in full with interest, whereas holders of allowed unsecured claims will receive only a 25% dividend.

The primary issue before the Court is whether, under the facts of this case, it was proper for the Trustee to deduct ten percent from the stipulated value of the real property as a projected cost of sale. An analysis of the basis for deducting costs

of sale from the value of real property necessarily must begin with the conceptual approach which must be employed in determining the amount of a creditor's secured claim. Section 506(a)[1] clearly states that value should not be viewed as a static concept, but, instead, its determination depends upon the purpose of the valuation and of the proposed disposition or use of such property. Further, the legislative history accompanying § 506 indicates that the value of an asset may vary depending upon the context of the valuation hearing:

> Value does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6312.

As one Bankruptcy Court has recently noted, "[b]y what standard security interests in Chapters 11, 12 and 13 ought to be determined is controversial to say the least." *In re Claeys*, 81 B.R. 985, 990 (Bankr.D.N.D.1987). The present controversy stems, in large part, from the conflicting language of § 506(a). The *Claeys* court described this conflict in the following manner:

> Whether a valuation is made without regard for potential costs of liquidation depends, it seems, upon the emphasis given to the first and second sentences of section 506(a). The first sentence, providing that the claim is secured to the extent of the value of the creditor's interest in the property, suggests that since it is the creditor's interest that is being valued and not the collateral itself, it should not make any difference whether the debtor is retaining the property. Yet, the language of the second sentence

suggests that the proposed disposition or use of the collateral itself must be considered when determining that value.

81 B.R. at 990–991.

Given the seemingly inconsistent language of § 506(a), it is not surprising that divergent lines of authority have developed from judicial application of the valuation concepts embodied in the Code. A few courts have read the second sentence of § 506(a) to require use of a fair market value in Chapter 13 cases where the collateral will be retained by the debtor. In *Matter of Crockett*, 3 B.R. 365 (Bankr.N.D. Ill.1980), the Court, in evaluating the secured status of a creditor whose collateral (an automobile) was to be retained and used under debtors' Chapter 13 plan, stated:

> Under a Chapter 13 plan the secured claim should be valued with due regard to the value of the property to the estate. "[T]he proposed disposition or use of such property" (Sec. 506(a)) in the instant case is for the debtors' retention and use. Therefore, the debtors cannot eat with the hounds and run with the hares. Seeking retention of the property, they cannot insist on liquidation values to be paid to the creditor in installments. The value of GMAC's secured claim under 506(a) is enhanced by the continued use of the collateral in effectuating the debtors' performance under the plan, which value must be reflected in distributions under the plan.

3 B.R. at 367. Thus, the *Crockett* court found that the creditor's secured claim should be determined by the fair market value of the automobile—which, under the facts of that case, was found to be the wholesale value. *See also, In re Courtright*, 57 B.R. 495 (Bankr.D.Or.1986) (relying upon second sentence of §. 506(a) to hold that, where debtors' plan contemplates retention of collateral, no deduction for

---

**1.** (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the

amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

costs of foreclosure and resale should be made).

The clear weight of authority runs contrary to the *Courtright* and *Crockett* decisions, however. Most courts recognize that the debtor's proposed retention and use of collateral does not emasculate the fact that it is in the first instance the *creditor's interest* in the collateral that must be valued. *See, e.g., In re Claeys*, 81 B.R. at 991. Hence, in valuing a creditor's interest in property, bankruptcy courts attempt to determine what the creditor could recover if the collateral were disposed of in a commercially reasonable[2] manner. *See, Virginia National Bank v. Jones (In re Jones)*, 5 B.R. 736, 739 (Bankr.E.D.Va. 1980); *In re. Klein*, 10 B.R. 657, 660 (Bankr.E.D.N.Y.1981); *Cohen v. Werner (In re Cohen)*, 13 B.R. 350 (Bankr.E.D.N.Y. 1981); *In re Davis*, 14 B.R. 226, 227–28 (Bankr.D.Me.1981); *Parr v. First Alabama Bank (Matter of Parr)*, 30 B.R. 276, 277 (Bankr.N.D.Ala.1983); *In re Frost*, 47 B.R. 961, 964 (D.Kan.1985); *In re Claeys*, 81 B.R. at 990–92.

In *In re Paige*, 13 B.R. 713, 714 (Bankr. S.D.Ohio 1981) (Sidman, J.), this court followed the majority rule in focusing on the creditor's interest in the property when valuing a claim in a Chapter 13 case:

> It is not the value of the property, *per se*, which is to be used in the determination of secured status, but rather it is the value of the creditor's interest in that property. While it may be conceded that the valuation standard in the Chapter 13 setting is not a forced sale or liquidation standard [see *In re Damron*, 8 B.R. 323

(Bkrtcy., S.D.Ohio 1980)], the Court must determine what a creditor would receive from the collateral upon its customary and commercially reasonable means of disposition. *In re Klein*, 10 B.R. 657, 7 B.C.D. 668 (Bkrtcy., E.D.N.Y. 1981). It is not, therefore, appropriate to merely take the fair value of property and assume that a creditor would receive that full amount upon disposition.

*See also, In re Neal*, 10 B.R. 535 (Bankr.S. D.Ohio 1981).[3] In determining the secured claim of a second mortgagee, the *Paige* court approximated the costs of sale at ten percent, based upon the customary seven percent real estate broker's commission in this geographic locale and various other costs which, hypothetically speaking, would approximate three percent. In reliance on *Neal* and *Paige*, this Court has routinely assessed a ten percent sale cost deduction, absent evidence establishing actual costs. *See, In re Richardson*, 82 B.R. 872, 873 (Bankr.S.D.Ohio 1987) (Sellers, J.). We hereby reaffirm our approval of *Paige* and *Neal*, at least as to the requirement that costs of sale should be deducted, and conclude that it is the creditor's interest in property which should be valued under § 506, not the value, *per se*, of the property itself. A valuation of the creditor's interest should, therefore, include a deduction for the hypothetical costs of sale, which this Court finds reasonable in the amount of ten percent.

In the case *sub judice*, the Court simply does not understand why the Trustee did not object, or has not objected, to the Claim of Cambridge PCA, or why he has attempt-

---

**2.** The determination that the general standard of valuation in bankruptcy should be the most commercially reasonable disposition was made by Judge Cyr in the seminal case of *In re American Kitchen Foods, Inc.*, 2 B.C.D. 715 (Bankr.D. Me.1976), which was decided under Chapter XI of the Act. In *American Kitchen*, the court compared the concept of a forced sale valuation against a standard based on commercial reasonableness (which was borrowed from Article 9 of the Uniform Commercial Code) and concluded that where a debtor continues to operate as a going concern and the collateral is used in connection with that operation, valuation of the collateral should be made in recognition of the "net recovery realizable from its disposition as

near as may be in the ordinary course of business." *Id.* at 722.

**3.** Legal commentators also have suggested that a court, in determining the value of a creditor's security interest, should ascertain what the creditor would receive upon a disposition of the collateral in a commercially reasonable manner. *See*, J. Queenan, *Standards for Valuation of Security Interests in Chapter 11*, 92 Com.L.J. 18, 29–33 (1987) (noting that in order to realize value in its collateral every creditor and, in fact, the debtor itself, will be required to sell it and incur the attendant costs of sale). *Also, see generally*, Fortgang and Mayer, *Valuation in Bankruptcy*, 32 U.C.L.A.L.Rev. 1061 (1985).

ed to determine administratively the secured portion of the Claim. Usually, the propriety of deducting projected costs of sale comes before the Court upon an objection to a claim. Here, because there has been no objection, the amount and validity of the Claim are presumed by virtue of B.R. 3001(f). Thus, it would appear that, unless a party files a written objection, and prevails thereon, the Claim remains an allowed secured claim in the amount of $35,976.25. Assuming an objection is filed which proposes to reduce the secured portion of the Claim to $29,492.86 under the formulae stated herein, that matter, if contested, could be submitted on the facts already before the Court since the record is complete as to value of the Collateral.

█ Movant further believes that it should be accorded relief from the Stipulation of Value, presumably on the ground that it would not have agreed to the stipulated values had it been aware of the ten percent deduction. Where a stipulation has been entered into and filed, one of the parties will not be allowed to withdraw from the agreement, except by leave of court upon cause shown. *Aurrecoechea v. Bangs,* 110 U.S. 217, 3 S.Ct. 639, 28 L.Ed. 125 (1884). No such cause has been shown by Cambridge PCA. Further, *Paige* and *Neal* have provided for a ten percent cost-of-sale deduction in this Court since 1981. The fact that Cambridge PCA and its counsel were unaware of that case law is insufficient cause to grant movant relief from the Stipulation of Value. Finally, Cambridge PCA stated no fact which would demonstrate that it recently became aware of the Trustee's ten percent deduction. A delay of more than two years before seeking relief from a stipulation constitutes a waiver and laches, precluding any equitable relief this Court might otherwise order.

Based upon the foregoing, the Motion shall be, and the same is hereby, DENIED.

IT IS SO ORDERED.