**In re Walter E. (Elsworth) SMITH, Lucy M. (Mae) Smith, Debtors.**

**Bankruptcy No. 2–88–02618.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Oct. 31, 1988.

Mitchel D. Cohen, M. Cohen & Associates, Columbus, Ohio, for debtors.

Grant A. Wolfe, Columbus, Ohio, for Ligon Specialized Hauler, Inc.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER UPON OBJECTION TO CLAIM

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court upon the Objection to Allowance of Claim ("Objection") filed by the debtors in this Chapter 13 case. Debtors object to allowance of the claim filed by Ligon Specialized Hauler, Inc. ("Ligon") in the amount of $5,463.01. Ligon contends that the entire $5,463.01 amount should be treated as a secured claim by the standing Chapter 13 trustee for distribution purposes. Debtors request that Ligon's claim be allowed as a wholly unsecured claim. Ligon has filed a memorandum in opposition to debtors' Objection and a request for hearing. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This contested matter is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(B). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

The parties entered the following stipulations at the outset of the hearing:

1. Ligon holds a judgment lien against certain real estate of the debtors located at 122 East Lincoln Avenue, London, Ohio. Ligon's judgment lien was perfected by the filing of a certificate of judgment with the Franklin County Municipal Court on or about March 14, 1985;

2. The real property of debtors to which Ligon's judicial lien has attached (the "Property") has a fair market value of $40,000;

3. A first mortgage upon the Property is held by Farmers Home Administration in the amount of $19,416;

4. TransAmerica Finance Company holds a second mortgage upon the Property in the amount of $9,884.

Based upon the foregoing, debtors contend that the fair market value of the Property, less hypothetical costs of sale, the first and second mortgages thereon, and the debtors' combined $10,000 homestead exemption leaves no value in the Property to secure Ligon's claim. Ligon rejoins by arguing that it is inappropriate to reduce the fair market value of the Property by hypothetical costs of sale. And, according to Ligon, because its judicial lien may not be primed by the debtors pursuant to 11 U.S.C. § 522(f), debtors' $10,000 homestead exemption should not be deducted in determining the amount of Ligon's secured claim.

Section 506 of the Bankruptcy Code establishes the standard for valuation of an allowed secured claim. Section 506(a) provides as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Section 506(a) makes it clear that it is not the value of the property which is determinative; instead, the Court must look to "the value of such *creditor's interest* in the *estate's interest* in such property." (Emphasis added). The arguments raised by Ligon center upon legal concepts that emanate from the phrases "creditor's interest" and "estate's interest" contained in § 506(a). Each of these concepts, and the contentions of Ligon relating thereto, will be examined below.

## THE CREDITOR'S INTEREST IN PROPERTY

Citing the debtors' retention of the Property under their plan, Ligon submits that hypothetical costs of selling the Property should not be deducted in valuing Ligon's secured claim. In its recent decision in *In re Boring*, 91 B.R. 791, (Bankr.S.D. Ohio 1988) this Court addressed the issue of whether hypothetical costs of sale are appropriately deducted in arriving at the value of a *creditor's interest* in the estate's interest in property. In *Boring*, the creditor made an argument identical to that asserted by Ligon herein—that the debtor's retention and use of the collateral should preclude deduction of hypothetical costs of sale in valuing the creditor's secured claim. In rejecting the creditor's contention, this Court stated as follows:

As one Bankruptcy Court has recently noted, "[b]y what standard security interests in Chapters 11, 12 and 13 ought to be determined is controversial to say the least." *In re Claeys*, 81 B.R. 985, 990 (Bankr.D.N.D.1987). The present controversy stems, in large part, from the conflicting language of § 506(a). The *Claeys* court described this conflict in the following manner:

Whether a valuation is made without regard for potential costs of liquidation depends, it seems, upon the emphasis given to the first and second sentences of section 506(a). The first sentence, providing that the claim is secured to the extent of the value of the creditor's interest in the property, suggests that since it is the creditor's interest that is being valued and not the collateral itself, it should not make any difference whether the debtor is retaining the property. Yet, the language of the second sentence suggests that the proposed disposition or use of the collateral itself must be considered when determining that value.

81 B.R. at 990–91.

Given the seemingly inconsistent language of § 506(a), it is not surprising that divergent lines of authority have developed from judicial application of the valuation concepts embodied in the Code. A few courts have read the second sentence of § 506(a) to require use of a fair market value in Chapter 13 cases where the collateral will be retained by the debtor. In *Matter of Crockett*, 3 B.R. 365 (Bankr.N.D.Ill.1980), the Court, in evaluating the secured status of a creditor whose collateral (an automobile) was to be retained and used under debtors' Chapter 13 plan, stated:

Under a Chapter 13 plan the secured claim should be valued with due regard to the value of the property to the estate. "[T]he proposed disposition or use of such property" (Sec. 506(a)) in the instant case is for the debtors' retention and use. Therefore, the debtors cannot eat with the hounds and run with the hares. Seeking retention of the property, they cannot

insist on liquidation values to be paid to the creditor in installments. The value of GMAC's secured claim under 506(a) is enhanced by the continued use of the collateral in effectuating the debtors' performance under the plan, which value must be reflected in distributions under the plan.

3 B.R. at 367. Thus, the *Crockett* court found that the creditor's secured claim should be determined by the fair market value of the automobile—which, under the facts of that case, was found to be the wholesale value. *See also, In re Courtright*, 57 B.R. 495 (Bankr.D.Or. 1986) (relying upon second sentence of § 506(a) to hold that, where debtors' plan contemplates retention of collateral, no deduction for costs of foreclosure and resale should be made).

The clear weight of authority runs contrary to the *Courtright* and *Crockett* decisions, however. Most courts recognize that the debtor's proposed retention and use of collateral does not emasculate the fact that it is in the first instance the *creditor's interest* in the collateral that must be valued. *See, e.g., In re Claeys*, 81 B.R. at 991. Hence, in valuing a creditor's interest in property, bankruptcy courts attempt to determine what the creditor could recover if the collateral were disposed of in a commercially reasonable manner. *See, Virginia National Bank v. Jones (In re Jones)*, 5 B.R. 736, 739 (Bankr.E.D.Va.1980); *In re Klein*, 10 B.R. 657, 660 (Bankr.E.D.N.Y. 1981); *Cohen v. Werner (In re Cohen)*, 13 B.R. 350 (Bankr.E.D.N.Y.1981); *In re Davis*, 14 B.R. 226, 227–28 (Bankr.D.Me. 1981); *Parr v. First Alabama Bank (Matter of Parr)*, 30 B.R. 276, 277 (Bankr.N.D.Ala.1983); *In re Frost*, 47 B.R. 961, 964 (D.Kan.1985); *In re Claeys*, 81 B.R. at 990–92.

In *In re Paige*, 13 B.R. 713, 714 (Bankr.S.D.Ohio 1981) (Sidman, J.), this court followed the majority rule in focusing on the creditor's interest in the property when valuing a claim in a Chapter 13 case:

It is not the value of the property, *per se*, which is to be used in the determination of secured status, but rather it is the value of the creditor's interest in that property. While it may be conceded that the valuation standard in the Chapter 13 setting is not a forced sale or liquidation standard [see *In re Damron*, 8 B.R. 323 (Bkrtcy., S.D.Ohio 1980) ], the Court must determine what a creditor would receive from the collateral upon its customary and commercially reasonable means of disposition. *In re Klein*, 10 B.R. 657, 7 B.C. D. 668 (Bkrtcy., E.D.N.Y.1981). It is not, therefore, appropriate to merely take the fair value of property and assume that a creditor would receive that full amount upon disposition.

*See also, In re Neal*, 10 B.R. 535 (Bankr. S.D.Ohio 1981). In determining the secured claim of a second mortgagee, the *Paige* court approximated the costs of sale at ten percent, based upon the customary seven percent real estate broker's commission in this geographic locale and various other costs which, hypothetically speaking, would approximate three percent. In reliance on *Neal* and *Paige*, this Court has routinely assessed a ten percent sale cost deduction, absent evidence establishing actual costs. *See, In re Richardson*, 82 B.R. 872, 873 (Bankr.S.D.Ohio 1987) (Sellers, J.). We hereby reaffirm our approval of *Paige* and *Neal*, at least as to the requirement that costs of sale should be deducted, and conclude that it is the creditor's interest in property which should be valued under § 506, not the value, *per se*, of the property itself. A valuation of the creditor's interest should, therefore, include a deduction for the hypothetical costs of sale, which this Court finds reasonable in the amount of ten percent.

*Boring*, 91 B.R. 791, 794–96 (footnotes omitted).

As the foregoing passage from *Boring* indicates, because it is the *creditor's interest* in the estate's interest in property which must be valued, it is appropriate to deduct costs of sale regardless of whether a debtor intends to retain and use the prop-

erty under a plan of reorganization.[1] Hence, the Court rejects Ligon's contention that hypothetical costs of selling the Property should not be deducted in arriving at the value of its secured claim. The Court notes that it specifically rejected the holding of *In re Courtright,* 57 B.R. 495 (Bankr.D.Or.1986)—the case cited by Ligon herein—in reaching its decision in *Boring.* Having concluded that a 10% hypothetical cost of sale deduction is proper, the Court will next address Ligon's second assertion: that debtors' combined $10,000 homestead exemption should not be subtracted from the value of the Property in determining the amount of Ligon's secured claim.

## THE ESTATE'S INTEREST IN PROPERTY

■ Section 506(a) directs that the Court ascertain the value of the "creditor's interest *in the estate's interest*" in the Property. (Emphasis added). Hence, the Court must determine the extent of the estate's interest in the Property. Pursuant to § 541 of the Code, "all legal and equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. The definition of property of the estate is broadened further in a Chapter 13 case by 11 U.S.C. § 1306, which brings after-acquired property and personal earnings into the bankruptcy estate. In analyzing the composition of the bankruptcy estate, the Court must also examine the exemptions available to the debtors under 11 U.S.C. § 522. Section 522(b)(2)(A) provides as follows:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate

. . . .

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the

petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place.

Ohio has "opted out" of the application of the federal exemptions pursuant to 11 U.S.C. § 522(b)(2). Ohio Revised Code ("O.R.C.") § 2329.662. Accordingly, a determination as to whether and to what extent the Property is exempt must be made with reference to Ohio law. Under O.R.C. § 2329.66(A)(1), each of the debtors are entitled to claim a homestead exemption in the maximum amount of $5,000. A review of the schedules accompanying debtors' petition reveals that debtors properly claimed their homestead exemption and no party in interest objected to debtors' claim of exemption within the time frame established by B.R. 4003(b). Consequently, debtors' interests in the Property ceased to be property of their bankruptcy estate and the estate's interest in the Property terminated with respect to this $10,000 in value.

According to Ligon, in determining the amount of its secured claim, a deduction for the debtors' $10,000 homestead exemption should not be made. Ligon cites the following passage from *Collier* in support of its argument:

If the property is exempt under section 522(b), but the subject lien or property does not come within section 522(f), only any equity of the debtor in the property should be deducted because, as set forth in section 522(c)(2), the debtor cannot protect such property from liability for an unavoided lien. Since the equity of the debtor in such property is the value remaining after deduction of all unavoided liens, an exemption (unless falling within section 522(f)) will not limit the amount of the secured claim. This ap-

---

**1.** Legal commentators also have suggested that a court, in determining the value of a creditor's security interest, should ascertain what the creditor would receive upon a disposition of the collateral in a commercially reasonable manner. *See,* J. Queenan, *Standards for Valuation of Security Interests in Chapter 11,* 92 Com.L.J.

18, 29–33 (1987) (noting that in order to realize value in its collateral every creditor and, in fact, the debtor itself, will be required to sell it and incur the attendant costs of sale). *Also, see generally,* Fortgang and Mayer, *Valuation in Bankruptcy,* 32 U.C.L.A.L.Rev. 1061 (1985).

pears to be consistent with the congressional intent.

3 *Collier on Bankruptcy* ¶ 5.06.04 at 506–18 (15th ed. 1988). Debtors also cite a number of cases which purportedly support the proposition that debtors' exempt equity in the Property should not be deducted in arriving at the amount of Ligon's secured claim: *Hall v. Finance One of Georgia (In re Hall),* 752 F.2d 582 (11th Cir.1985); *In re Asplund,* 21 B.R. 139, 141 (Bankr.W.D. Wis.1982); *Cohen v. Werner (In re Cohen),* 13 B.R. 350 (Bankr.E.D.N.Y.1981); *Public Finance Corp. v. Lantz (In re Lantz),* 7 B.R. 77 (Bankr.S.D.Ohio 1980); *Credithrift of America v. Meyers (In re Meyers),* 2 B.R. 603, 1 C.B.C.2d 470, 473 (Bankr.E.D.Mich.1980). The Court's review of the cases cited by Ligon reveals that none of these decisions supports its contention regarding the nondeductibility of debtors' $10,000 homestead exemption. In fact, in the *Asplund* decision cited by Ligon, the court deducted debtors' exempt equity in calculating the value of the judicial lien creditor's secured claim under § 506(a) of the Bankruptcy Code.

Furthermore, the premise underlying Ligon's argument with respect to the deductibility of debtors' $10,000 homestead exemption is fundamentally flawed. Ligon's argument fails to take into account the predominance accorded under Ohio law to a debtor's homestead exemption over a judicial lien. Under Ohio Revised Code ("O.R.C.") § 2329.66(A), certain interests and rights are exempted from execution, garnishment, attachment or sale in satisfaction of a judgment or order. Included within these exempted interests and rights is a debtor's homestead exemption pursuant to O.R.C. § 2329.66(A)(1). O.R.C. § 2329.661 provides that certain claims are not exempted

**2.** Section 522(f) of the Code states:
(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—

from judgment. O.R.C. § 2329.661 provides as follows:

(A) Division (A)(1) of section 2329.66 of the Revised Code does not: (1) extend to a judgment rendered on a mortgage executed, or security interest given on real or personal property by a debtor or to a claim for less than $400 for manual work or labor; ....

Construing O.R.C. §§ 2329.66(A)(1) and 2329.661 together, it is clear that, while consensual liens have priority over exempted interests and rights, nonconsensual liens, such as the judgment lien held by Ligon in the instant case, may not be satisfied from exempted interests and rights of the debtor provided for by O.R.C. § 2329.66. In short, the debtors' homestead exemption is entitled to priority over Ligon's nonconsensual judicial lien under Ohio law.

Ligon argues that the district court decision in *In re Greenhill,* 62 B.R. 1 (S.D.Ohio 1984) supports the proposition that debtors' homestead exemption should not be deducted in determining the allowed amount of Ligon's secured claim. Ligon's argument may be summarized as follows: Because *Greenhill* establishes that Ligon's judgment lien is not subject to avoidance pursuant to 11 U.S.C. § 522(f),[2] debtors' homestead exemption should not be deducted from the value of the Property in arriving at the allowed amount of Ligon's secured claim. In *Greenhill,* the district court affirmed former Bankruptcy Judge Kelleher's order granting summary judgment in a proceeding brought by a debtor to avoid a judgment lien pursuant to 11 U.S.C. § 522(f). The court cited with approval the following passage from the bankruptcy court's order:

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

"... under Ohio law a judicial lien does not impair a debtor's claim of exemption in residential real estate because a ... debtor's exemption for residential real estate will prevail over (a creditor's) judgment lien and should be recognized and paid ahead of that lien from the proceeds of any future judicial sale of the debtor's real estate." [*In re Schwartz*, 27 B.R. 195 (S.D.Ohio).]. Therefore, there being no impairment of an exemption, 11 U.S.C. § 522(f)(1) may not be used to avoid judicial liens upon a debtor's residential real estate."

62 B.R. at 2.

The district court added:

The issue to be decided is whether the bankruptcy court's interpretation of what constitutes the impairment of an exemption under Ohio law is correct. The bankruptcy court's interpretation is certainly reasonable. In effect, the bankruptcy court is saying that because the debtor will always be entitled to the amount of the exemption for which § 2329.66 provides, the exemption can never be impaired by the existing judicial liens. This is because when the sale of the debtor's residence occurs, the debtor will receive, at least, the exemption amount, provided, of course, that the debtor's equity in the residence is equal to or greater than the exemption amount.

Ligon's citation of *Greenhill* in the instant case is inexplicable. In fact, the *Greenhill* holding reaffirms the very principle which refutes Ligon's argument herein—*i.e.*, that debtors' homestead exemption in the Property is entitled to priority over a nonconsensual judicial lien under Ohio law. In any event, while the issue of the avoidability of Ligon's judgment lien under 11 U.S.C. § 522(f) is not before it for decision, this Court's interpretation of § 522(f) differs from that articulated by the bankruptcy court in *Greenhill*, [27 B.R. 197 (Bankr.S.D.Ohio 1982)]. The bankruptcy court's restrictive interpretation of the concept of exemption impairment in *Greenhill* has been characterized as a "distinct minority" view. *See, In re Bland*, 56 B.R. 1, 2 (Bankr.N.D.Ohio 1984); *Matter of Dixon*, 79 B.R. 702, 706 (Bankr.N.D.Ohio 1987).

The clear weight of authority, and the better reasoned view, is that a debtor's homestead exemption is impaired by a judicial lien, within the meaning of 11 U.S.C. § 522(f), where the sum of total mortgage indebtedness, plus the homestead exemption, equals or exceeds the value of the debtor's property. *Dixon*, 79 B.R. at 706. *See also, Buroker v. Raybourn*, 61 B.R. 10 (S.D.Ohio 1986); *In re Gallardo*, 35 B.R. 321 (Bankr.N.D.Ohio 1983); *In re Morelock*, 35 B.R. 518 (Bankr.N.D.Ohio 1983); *In re Schmidt*, 36 B.R. 144 (Bankr.N.D. Ohio 1983); *In re Richardson*, 55 B.R. 526 (Bankr.N.D.Ohio 1985); *Matter of Anderson*, 57 B.R. 953 (Bankr.S.D.Ohio 1986); *In re James*, 75 B.R. 124 (Bankr.S.D.Ohio 1987); *In re Lusk*, 80 B.R. 428 (Bankr.N.D.Ohio 1987). Thus, while the district court characterized the bankruptcy court's interpretation of § 522(f) as "reasonable" in *Greenhill*, this Court believes that the more reasonable and more widely-accepted view is that expressed in the decisions discussed above.

With this basic principle in mind—that the debtor's homestead exemption receives priority over nonconsensual judgment liens under Ohio law—the lynchpin of Ligon's argument is removed. Thus, in arriving at the value of Ligon's secured claim, the following calculation must be undertaken:

| | |
|---|---|
| $40,000 | Fair Market Value of the Property |
| ($ 4,000) | Less costs of sale |
| $36,000 | Subtotal |
| ($19,416) | First Lien of Farmers Home Administration |
| ($ 9,884) | Second Mortgage of Trans-America Finance Company |
| $ 6,700 | Subtotal |
| ($10,000) | Debtors' Homestead Exemption |
| ($ 3,300) | |

As the foregoing calculation reflects, after subtracting all outstanding encumbrances and debtors' combined $10,000 homestead exemption from the adjusted fair market value of the Property, there is no value remaining in the Property to secure Ligon's claim. Accordingly, Ligon's claim is fully

unsecured by operation of 11 U.S.C. § 506(a).

Based upon the foregoing, debtors' Objection to the claim of Ligon Specialized Hauler, Inc. is hereby SUSTAINED.

IT IS SO ORDERED.