**In re Jimmie BELLAMY and Cynthia Bellamy, Debtors.**

**Jimmie BELLAMY and Cynthia Bellamy, Plaintiffs,**

**v.**

**FEDERAL HOME LOAN MORTGAGE CORP., Assignee of Comfed Mortgage Co., Inc. and Norton P. Feinstein, Defendants.**

**Bankruptcy No. 5–90–00688.**
**Adv. No. 5–90–0203.**

United States Bankruptcy Court,
D. Connecticut.

Jan. 10, 1991.

Ira B. Charmoy, George W. Derbyshire, Law Offices of Ira B. Charmoy, Bridgeport, Conn., for plaintiffs.

Carla E. Craig, Hertzog, Calamari & Gleason, New York City, Dean S. Cooper, Associate Gen. Counsel, Federal Home Loan Mortg. Corp., Reston, Va., and Richard A. Roberts, Fazzone, Nuzzo & Baille, P.C., Cheshire, Conn., for defendant Federal Home Loan Mortg. Corp.

## MEMORANDUM AND DECISION ON COMPLAINT TO BIFURCATE AND VOID LIEN UNDER CODE § 506(a), (d) IN CHAPTER 13 CASE

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiffs seek to bifurcate the claim and void the lien of Federal Home Loan Mortgage Corp. ("the defendant")[1] under Code § 506(a) and (d),[2] to the extent that the allowed amount of that claim exceeds the value of their residence. The plaintiffs further seek a determination that the value of their residence is its fair market value reduced by the amount of so-called disposal costs.[3]

## BACKGROUND

On May 24, 1987, the plaintiffs purchased real property located at 135 Clover Hill Avenue in Bridgeport, Connecticut as their principal residence (the "residence"). To finance that purchase, the plaintiffs gave Comfed Mortgage Co., Inc. a $133,-000.00 promissory note payable in monthly installments of $1,329.79 during its twenty year term, which was secured only[4] by a first mortgage on the residence. The note provided that in the event of a late payment, the note holder had the right to accelerate the due date of the principal balance and all interest owed. The defendant subsequently purchased the mortgage and now holds a first perfected security interest on the residence.[5]

The plaintiffs filed for relief under Chapter 13 of the Bankruptcy Code on April 18, 1990. On that date, the plaintiffs were in arrears on their mortgage payments in the approximate amount of $13,000.00. On April 25 the plaintiffs commenced the instant adversary proceeding to "strip" the defendant's lien to the value of the residence. The proof of claim filed by the defendant on September 4, 1990 states that the total amount of its secured claim is $151,340.85. The parties have stipulated that the value of the residence is $127,-

---

1. The defendant Feinstein has failed to appear and will be defaulted.

2. For the text of § 506(a), (d), *see infra* at 858.

3. The plaintiffs' complaint also sought a determination that it is permissible under § 1322(b)(5) for them to reinstate the defendant's mortgage and maintain monthly installment payments for the same period as provided in the original mortgage, but adjusted to reflect the reduced amount of its secured claim. The parties agreed during oral argument that this was a confirmation issue which need not be addressed in this decision.

4. For the text of § 1322(b)(2), *see infra* at 858.

5. 12 U.S.C. § 1454(a) provides that the Federal Home Loan Mortgage Corporation "is authorized to purchase ... residential mortgages from ... any financial institution the deposits or accounts of which are insured by an agency of the United States...." The FHLMC was established to provide stability and assistance in the secondary market for home mortgages by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for home mortgage financing. Pub.L. 91–351, § 301, *as amended*, P.L. 101–73, § 731(a), 103 Stat. 429 (1989).

500.00 and that "[a] reasonable estimate of the costs of disposal of the subject property to the Defendant, FEDERAL HOME LOAN MORTGAGE CORP., would be $10,-200.00, which is eight percent (8%) of the value of said property." *Stipulation of Facts*, Dec. 6, 1990. The parties further stipulated during oral argument that the defendant's rights are secured only by a perfected security interest the residence, and that the defendant's mortgage is a so-called long term mortgage as to which § 1322(b)(5) is applicable.

## DISCUSSION

### I.

■ Code § 506 provides in relevant part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

....

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

Code § 1322(b) provides:

[T]he plan may

....

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

....

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due....

Chapter 13 debtors typically attempt to save their homes from state court ordered foreclosure by filing plans which cure defaults and maintain payments on reinstated mortgages. *See* 11 U.S.C. § 1322(b)(2), (5).[6] As a refinement to that strategy, debtors attempt to utilize § 506(a) and (d) to reduce the amount of the reinstated mortgage to the value of their residence. That strategy is commonly employed during times, such as these, when real estate values are depressed. These debtors go a step further by seeking a determination that the value of their residence is reduced by the amount of so-called disposal costs.

Predictably, mortgagees, such as this defendant, argue that "§ 1322(b)(2) prohibits modification of any rights of a 'holder of ... a claim secured by a security interest in real property that is the debtor's principal residence' ", so that the plain language of the statute prevents the application of § 506(a). The defendant further contends that any conflict between § 506 and § 1322(b)(2) must be resolved in favor of § 1322(b)(2), as it is the more specific provision; that the legislative history supports an interpretation of § 1322(b)(2) which prevents the plaintiffs' use of § 506(a); and that allowing the plaintiffs to reduce the mortgage would be at odds with the statutory scheme of chapter 13 and produce an unfair result in that the plaintiffs would enjoy the benefit of any appreciation in the residence's value. The plaintiffs respond that § 506(a) and § 1322(b)(2) must be read together and harmonized.

Courts are divided on whether § 1322(b)(2) prohibits lien stripping under § 506(a). Those which hold that it does not

---

**6.** A primary purpose of chapter 13 is to allow debtors to save their homes. *See DiPierro v. Cullen (In re Taddeo),* 9 B.R. 299, 303 (Bankr.S. D.N.Y.1981), *aff'd,* 15 B.R. 273 (S.D.N.Y.1981), *aff'd,* 685 F.2d 24 (2d Cir.1982).

reason that § 1322(b)(2) only prohibits modification of the allowed secured portion of the creditor's claim as established under § 506(a). *E.g., Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 126–28 (3d Cir.1990); *Hougland v. Lomas & Nettleton Co. (In re Hougland)*, 886 F.2d 1182, 1183–85 (9th Cir.1989); *Goins v. Diamond Mortgage Corp.*, 119 B.R. 156, 158–62 (Bankr.N.D.Ill.1990); *McNair v. Chrysler First Fin. Serv. Corp. of Va. (In re McNair)*, 115 B.R. 520, 522–23 (Bankr.E.D. Va.1990); *In re Moore*, 113 B.R. 239, 239 (Bankr.E.D.Va.1990); *Brouse v. CBS Mortgage Corp. (In re Brouse)*, 110 B.R. 539, 543 (Bankr.D.Colo.1990).

Other courts hold that § 506(a) may not be read to interfere with the specific prohibition of § 1322(b)(2), which they say preserves the rights of secured creditors, including the right to full payment of their secured claim and the right "to attempt to 'use an appreciation in land values to offset their losses' at some future time." *In re Christiansen*, 121 B.R. 63, 64, 20 B.C.D. 1986, 1986 (Bankr.D.Co.1990), quoting *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 592 (10th Cir.1990) (holding that chapter 7 debtor could not void under § 506 the unsecured portion of a lien on real property which had been abandoned by the bankruptcy estate). *See also In re Sauber*, 115 B.R. 197, 198–99 (Bankr.D.Minn. 1990); *Matter of Kaczmarczyk*, 107 B.R. 200, 202–03 (Bankr.D.Neb.1989); *In re Russell*, 93 B.R. 703, 705–07 (D.N.D.1988); *In re Catlin*, 81 B.R. 522, 523–24 (Bankr.D. Minn.1987). I respectfully decline to follow those cases as I believe that their conclusions beg the question, what are the rights of a secured creditor after the commencement of a chapter 13 case?

1.

■ It is well settled that "[p]roperty rights are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Here, as noted, it is conceded that under state law and the note and mortgage, the defendant has a perfected security interest in the plaintiffs' residence. It is also well settled that after bankruptcy, a creditor's rights are restricted because of the codified public policy of giving a debtor an opportunity to reorganize, *see In re Wonder Corp. of America*, 72 B.R. 580, 588 (Bankr.D. Conn.1987), *aff'd*, 82 B.R. 186 (D.Conn. 1988), which in chapter 13 usually means saving the home. Thus, while there is no question as to the validity of the defendant's security interest in the plaintiffs' residence, all that means is that the plaintiffs' debt was secured to the extent of the value of the collateral held by the defendant, i.e. their residence. The defendant never had a claim secured by more than the value of its collateral. And although the defendant had a prepetition right to accelerate its note, commence a foreclosure action, and realize any subsequent increase in the value of the residence, those rights do not survive bankruptcy and are not protected by § 1322(b)(2). To hold otherwise would, inter alia, nullify the automatic stay. *See* 11 U.S.C. § 362(a).

Contrary to the defendant's assertion, it has no right to payment of its secured claim; it only has a right to the payment of the *allowed* amount of that claim. Indeed, no creditor in a chapter 13 case has the right to the payment of its claim—only the payment of the *allowed* amount of that claim. *See* 11 U.S.C. § 1325(a)(5). *See also* 11 U.S.C. § 726(a). It is the plaintiffs, on the other hand, who have the right to cure the default, which reduces the defendant's secured claim to the amount of the arrearage, and provide in their plan for payment of that amount as the *allowed* amount of the secured claim. *See* 11 U.S.C. §§ 1322(b)(5), 1325(a)(5).

The defendant also argues that it has a right to any potential appreciation in the value of the residence. But any such appreciation is theoretical at best, and the defendant cannot take advantage of any rise in value because of the automatic stay. Moreover, since real estate values fluctuate, the value can be greater or less than the amount of the debt at any given time. Thus, it follows that any right to appreciation of the defendant's collateral cannot be

measured unless it is fixed at a point in time. Section 506(a) is the congressionally prescribed method of fixing the value of collateral in chapter 13. *See* 11 U.S.C. § 103(a).[7]

2.

Central to the defendant's position, and, I believe, to the cases which hold that a chapter 13 debtor cannot strip a lien under § 506(a) and (d) is the notion that the secured and unsecured portions of an undersecured creditor's claim must be treated as a fully secured claim. Under that logic, the "other than" clause in § 1322(b)(2) would apply to both the secured and unsecured portions of the claim. The flaw in that argument is that § 506(a) specifically and the Code as a whole treat an undersecured creditor as a holder of two entirely separate claims. *Goins, supra,* 119 B.R. at 162.

Following *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989), it is clear that "[s]ubsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured."[8] It is also clear that § 506(a) is generally applicable in chapter 13 proceedings. Code § 103(a) provides that "chapter ... 5 of this title [applies] ... in a case under chapter ... 13 of this title."

At least one court has held that § 1322(b)(2) establishes an exception to § 506(a). *In re Christiansen, supra,* 121 B.R. at 64, 20 B.C.D. at 1986. I disagree. If Congress intended to carve out an exception to § 506(a) it could have accomplished that result by the express use of language to that effect as was done in chapter 11. Code § 1111(b)(2) provides that "*notwithstanding* section 506(a) of this title" an undersecured creditor may elect to have an allowed claim treated as a secured claim to

the full extent the claim is allowed, rather than to the extent of the collateral. Where, as here, a statute, i.e., title 11, specifies exceptions to the general application of one of its provisions, other exceptions not explicitly provided for will not be implied. *E.g., United States v. Goldbaum,* 879 F.2d 811, 813 (10th Cir.1989). Accordingly, I conclude that § 506(a) is not excepted by § 1322(b)(2), that the phrases "secured claims" and "unsecured claims" in § 1322(b)(2) mean what § 506(a) says they mean, and that the defendant has two claims, to wit: a secured and an unsecured claim.

This conclusion is underscored by the different treatment given throughout the Code to the secured and unsecured portions of an undersecured claim. For example, an undersecured claim survives a chapter 7 discharge to the extent of the value of the collateral which secures it; the unsecured portion of the claim is treated separately and discharged, unless a discharge is denied under §§ 523 or § 727. *See Lindsey v. Federal Land Bank of St. Louis (Matter of Lindsey),* 823 F.2d 189, 190–92 (7th Cir.1987). Likewise, it is self evident that a creditor with a lien on collateral worth a small percentage of its claim should not be treated in a chapter 13 plan as holding a single fully secured claim, rather than one relatively small secured claim and one relatively large unsecured claim. *See Goins, supra,* 119 B.R. at 162.

It follows from the conclusion that the defendant has a secured claim and an unsecured claim that the § 1322(b)(2) "other than" clause does not protect its unsecured claim. The rule of the last antecedent provides that a qualifying phrase must be applied to words or phrases immediately preceding it. *Wilshire Westwood Assoc. v. Atlantic Richfield Corp.,* 881 F.2d 801, 804 (9th Cir.1989); *United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 751 (1st Cir.1985). Be-

---

7. The same observation is relevant in § 522(f), which provides in part:
   Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section....

8. The Court illustrated this principle with the following example: "[A] $100,000 claim, secured by a lien on property of a value of $60,000, is considered to be a secured claim to the extent of $60,000, and to be an unsecured claim for $40,000." *Id.* 489 U.S. at 239 n. 3, 109 S.Ct. at 1029 n. 3.

cause the "other than" clause immediately follows "holders of secured claims", the secured claim language is the referent of the "other than" clause, and only the allowed amount of the "secured claim" is protected from modification by § 1322(b)(2). *Hougland, supra,* 886 F.2d at 1184.

While it is true that specific statutory provisions govern over general ones, that rule of statutory construction is applicable only when there is inescapable conflict between two provisions. *Aeron Marine Shipping Co. v. United States,* 695 F.2d 567, 576 (D.C.Cir.1982). Statutory provisions, whenever possible, are to be construed in a way that avoids conflicts and achieves consistency. *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1186 (6th Cir.1982); *Citizens to Save Spencer County v. EPA,* 600 F.2d 844, 870 (D.C.Cir.1979). Properly read, § 1322(b)(2) grants special protection only to an allowed "secured claim" as that term is defined in § 506(a), and the two provisions are not in conflict. *Hougland, supra,* 886 F.2d at 1184; *Wilson, supra,* 895 F.2d at 128.

### 3.

The legislative history of § 1322(b)(2) is not completely unambiguous, *see Wilson, supra,* 895 F.2d at 127 ("Unfortunately, our review of the history of the provision does not provide us with much insight into the critical question here."), but even when it is read in a light most favorable to the defendant, it provides no support for the defendant's position. Discussing "Plans for Debtors with Regular Income" in its 1973 report, the Commission on the Bankruptcy Laws of the United States stated:

> If a secured creditor is protected to the extent of the value of his collateral, there is no reason why he should be able to prevent the confirmation and consummation of a plan proposed by a debtor for the payment of his debts out of future income.... The proposal does not contemplate that the creditor so secured should be entitled to insist that the plan strictly preserve all of the terms of his original contract if the value of his claim against the property of the debtor is preserved. Insofar as there is a deficien-

cy of the collateral to cover the claim of the unsecured creditor, he may be and should be treated as a member of the class of unsecured creditors.

H.R. Doc. No. 93–137, 93rd Congress, 1st Sess. (1978), reprinted in *Collier on Bankruptcy,* App. 2, pt. I, at 166 (15th ed. 1990). The original House version of § 1322(b) provided: "the plan may— ... (2) modify the rights of holders of secured claims or of holders of unsecured claims...." H.R. No. 8200, 95th Cong., 1st Sess. (1977), reprinted in *Collier,* App. 3, pt. III, at 537. The original Senate version of § 1322(b) provided: "the plan may— ... (2) modify the rights of holders of secured claims (other than claims wholly secured by mortgages on real property) or of holders of unsecured claims...." S. 2266, 95th Cong., 2d Sess. (1978), reprinted in *Collier,* App. 3, pt. VII, at 573–73. The final version of § 1322(b)(2) represented a "compromise agreement", 124 Cong.Rec. H 1106–07 (Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17423 (Oct. 6, 1978) (statement of Sen. DeConcini), between the House version that allowed modification of all secured claims and the Senate version which allowed modification of all secured claims except "claims wholly secured by mortgages on real property". As the final version represented a compromise somewhere between the pro-debtor House version and the pro-creditor Senate version, it is apparent that the final version of § 1322(b)(2) provides no more protection to creditors than the original Senate version. Even if the phrase "wholly secured" is interpreted to mean solely secured, which is a strained reading, rather than secured to the entire extent of the claim, the legislative history adds nothing to the force of the defendant's argument. If, on the other hand, that phrase means entirely secured, then the defendant's reading of § 1322(b)(2) (i.e., if any of its claim is secured, its entire claim must be treated as though it is secured) would give the defendant more protection than it would have had under the original Senate version.

### II.

The plaintiffs argue that the value to be determined under § 506(a) is the val-

ue of the creditor's interest in property, which they contend is the stipulated fair market value of $127,500.00 less the stipulated hypothetical disposal costs of $10,200.00. I disagree.

■ A number of courts have focused on the first sentence of § 506(a), i.e., "is a secured claim to the extent of the value of such creditor's interest in the estate's interest", and held that costs of sale should be calculated and deducted from the secured amount of the creditor's claim notwithstanding the debtor's proposed retention of the property. *E.g., In re Smith,* 92 B.R. 287, 289–91 (Bankr.S.D.Ohio 1988); *In re Boring,* 91 B.R. 791, 794–96 (Bankr.S.D. Ohio 1988); *In re Claeys,* 81 B.R. 985, 990–92 (Bankr.D.N.D.1987). The court in *Boring* stated that "it is the creditor's interest in property which should be valued under § 506, not the value, per se, of the property itself." 91 B.R. at 795. Under this reasoning, courts attempt to determine what a creditor could recover if the collateral were disposed of in a commercially reasonable manner. *In re Smith, supra,* 92 B.R. at 290.

The authority of those decisions was significantly undermined by the Supreme Court's discussion of § 506(a) in *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In holding that undersecured creditors are not entitled to post-petition interest as compensation for the delay in foreclosing on their collateral imposed by the automatic stay, the Court analyzed the meaning of the "interest in property" referred to in Code § 362(d)(1).[9] In doing so, the Court examined the meaning of "interest in property" in § 506(a) and stated that

[i]n subsection (a) of this provision the creditor's "interest in property" obviously means his security interest without

taking account of his right to immediate possession of the collateral on default. If the latter were included, the "value of such creditor's interest" would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues—since the value of the entitlement to use the collateral from the date of the bankruptcy would rise with the passage of time. No one suggests this was intended. *The phrase "value of such creditor's interest" in § 506(a) means "the value of the collateral."*

*Id.* at 372, 108 S.Ct. at 630 (emphasis added)

The reliance on the first sentence of § 506(a) is further undercut by the language of the second sentence of that section, i.e., "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property...." If the first sentence is interpreted to mean that value must always be fixed at the amount a creditor would receive upon foreclosure, regardless of the debtor's proposed disposition or use of the property, then the second sentence of § 506(a) would be surplusage. *Beacon Hill Apartments, Ltd. v. Columbia Sav. and Loan Ass'n (In re Beacon Hill Apartments, Ltd.),* 118 B.R. 148, 150–51 (N.D.Ga.1990); *In re Courtright,* 57 B.R. 495, 497 (Bankr.D.Or. 1986). It is a basic principle of statutory construction that "[w]ithout a clear congressional command otherwise, ... [courts] will not construe a statute in a way that makes some of its provisions surplusage." *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985). In light of the plaintiffs' intention to retain the residence,[10] there will be no sales costs associated with the "proposed disposition or use", and there should be no deduction

---

**9.** Code § 362(d) provides in part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

**10.** The plaintiffs intentions are not completely clear. In their memorandum, the plaintiffs state that they plan to sell the residence "within [their] chapter 13 plan, [but] may ultimately retain the property because of circumstances which change during the plan period." *Plaintiffs' Memorandum* at 7. It is clear that the plaintiffs intend to retain the property for some period of time.

for costs which are not in fact incurred. *E.g., In re. Beacon Hill Apartments, Ltd., supra,* 118 B.R. at 150–52; *Wolk v. Goldome Realty Credit Corp. (In re 222 Liberty Assoc.),* 105 B.R. 798, 802–04 (Bankr. E.D.Pa.1989); *In re Bellman Farms, Inc.,* 86 B.R. 1016, 1019 (Bankr.D.S.D.1988).

CONCLUSION

The plaintiffs are entitled to bifurcate the defendant's claim and avoid the defendant's lien above the fair market value of the residence, but disposal costs will not be deducted from the fair market value of the residence. Accordingly, a judgment shall enter which voids and discharges the defendant's lien in excess of $127,500.00, and IT IS SO ORDERED.